STATE OF NEBRASKA, APPELLEE, V. JERRY A. MARCO, APPELLANT.
368 N.W.2d 470

Filed May 31, 1985.   No. 84-376.

James Martin Davis of Dolan, Davis & Gleason, for appellant.

Paul L. Douglas, Attorney General, and Jill Gradwohl, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

Appellant, Jerry A. Marco, was informed against in the district court for Sarpy County of the crime of attempted first degree murder. The jury found him guilty of third degree assault. Appellant was sentenced to 1 year at the Nebraska Department of Corrections. He appeals. We reverse and remand for a new trial.

Appellant assigns as error (1) the alleged improper impeachment of a prosecution witness and (2) the denial by the trial court of the defendant's motion for a mistrial.

The complainant, David J. Vermeulen, an acknowledged paid drug informer for the Sarpy County Sheriff's Department, testified that on October 14, 1982, he was operating his automobile west on Josephine Street, near 72d Street, in La Vista, Sarpy County, Nebraska. As he approached 72d Street, a shot was fired toward his car from a red and white pickup truck. Vermeulen identified the defendant as the person who fired the shot. There were no other witnesses to the shooting. Upon investigation police found a smashed shell casing and broken glass, and photographed a shattered window on the complainant's car.

Prior to the time of the shooting incident, Brenda Marco, the appellant's daughter, had been charged with two counts of distribution of marijuana, based on the evidence furnished by the complainant of sales to him. The exact times of the following events are unclear; however, it is established that Brenda gave a statement to police implicating the appellant in

the shooting. Thereafter, Brenda pled guilty to one of the marijuana counts and was placed on probation. Later, Brenda gave additional statements contradicting the first statement, including testimony at a previous court proceeding against the appellant in which she either denied knowledge of the events referred to in her first statement or denied memory of the statements and the events referred to in the statements. At the time of trial, charges were pending against Brenda Marco for violations of probation.

During appellant's trial, at a conference, Brenda's counsel objected to the order compelling his client to testify. In his statement to the court, Brenda's counsel asserted, with respect to various statements she had given, "I do know that she's given me a statement and where she vehemently denied that she knew anything about this case." The trial court granted limited immunity to Brenda and ordered her to testify.

Both of appellant's assigned errors relate to Brenda Marco's testimony.

On direct examination she first recited that she had discovered that the complainant was responsible for her arrest on the marijuana charge. In response to questions by the county attorney, Brenda then denied having a conversation with her father about Vermeulen being the informant, making arrangements with her father to harm Vermeulen, being with her father on the night of the alleged shooting, and being in the pickup truck with her father at 72d and Josephine Streets. The prosecutor then asked Brenda if she remembered giving a statement on June 17, 1983, at the Sarpy County Courthouse, to Officer Steven Knievel of the La Vista Police Department and Deputy County Attorney Stephen Sturek. Brenda responded, "I'm not sure if I do or not." The prosecutor then asked if she remembered a portion of the June 17 statement in which she related that her father had learned the informant's identity and had asked her several questions about him, e.g., where he lived and what he looked like. Brenda replied she did not remember. The prosecutor continued his questioning, and further read a passage from the statement where Brenda had stated that a few nights before the shooting she and the appellant had been looking for Vermeulen. The appellant's

counsel interposed an objection to the form of questioning, which was sustained. The questioning of the witness then proceeded in much the same format, with the prosecutor reading selected portions of the statement and the witness in turn either denying any recollection of making such statements or the underlying events. Appellant's counsel's further objections to the questioning of the witness as an improper form of impeachment were overruled.

Brenda was then asked by the prosecutor, "Have you ever been afraid of your dad within the last — since this incident occurred?" Appellant's counsel objected to the question, but the objection was overruled. This question was repeated, and Brenda responded, "Once. Q. Tell — when was that? A. When Officer Knieval [sic] told me that he killed two other people already." Appellant's counsel immediately moved for a mistrial, which was taken under advisement and subsequently denied. The jury was instructed to disregard the remark as nonresponsive.

The prosecutor then continued his direct examination by asking Brenda if she remembered a remark in her June 17 statement that she had seen her father in jail and was afraid of him. The examination of the witness then continued, with the prosecutor confronting Brenda with prior sworn testimony from other proceedings and from a deposition.

At the conclusion of Brenda's testimony, the jury was admonished that inconsistent statements brought out during her testimony were to be used solely for assessing credibility. Proper limiting instructions were also given to the jury prior to its deliberations.

Generally, the credibility of a witness may be attacked by any party, including the party who called the witness. Neb. Rev. Stat. § 27-607 (Reissue 1979). One means of attacking the credibility of a witness is by showing inconsistency between her testimony at trial and what she said on previous occasions. *State v. Price*, 202 Neb. 308, 275 N.W.2d 82 (1979). Appellant's first assignment of error presents us with two issues: (1) Whether, as a matter of law, prior statements may be inconsistent with a present denial of recollection of having made them; and (2) Whether the recitation by the prosecutor of such statements in

the presence of the jury denied the appellant a fair trial.

Appellant first contends that because of the very nature of the witness' answers, i.e., "I don't know" or "I don't remember," her statements were not really inconsistent. As a general rule, it may be shown that a witness made an inconsistent or contradictory statement if she refuses either to deny or affirm that she did, or if she answers that she does not remember whether or not she made it, or if she does not unequivocally admit that she did. 98 C.J.S. *Witnesses* § 612 (1957). The trial court has considerable discretion in determining whether testimony is "inconsistent" with prior statements; inconsistency is not limited to diametrically opposed answers but may also be found in evasive answers, inability to recall, silence, or changes of position. *United States v. Russell*, 712 F.2d 1256 (8th Cir. 1983). Upon examination of Brenda Marco's testimony, the trial court did not abuse its discretion in finding Miss Marco's testimony inconsistent with her prior statements.

However, the record does reveal error in the use of Miss Marco's prior statements. Although a party is free to impeach his own witness, this rule is not without limitations. It is elementary that out-of-court statements offered to prove the truth of the matter asserted are hearsay. Neb. Rev. Stat. § 27-801(3) (Reissue 1979). Prior extrajudicial statements of a witness may be received into evidence for the purpose of assisting the jury in ascertaining the credibility of the witness, but unless they are otherwise admissible, they may not be considered as substantive evidence of the facts declared in the statements. *State v. Brehmer*, 211 Neb. 29, 317 N.W.2d 885 (1982). Because of the recognized conceptual difficulties juries may have in distinguishing testimony admissible for impeachment from testimony admissible for its substance, the maximum legitimate effect of the impeaching testimony can never be more than the cancellation of adverse testimony. *United States v. Crouch*, 731 F.2d 621 (9th Cir. 1984). As the Circuit Court for the Seventh Circuit recently said:

> [I]t would be an abuse of the rule, in a criminal case, for the prosecution to call a witness that it knew would not give it useful evidence, just so it could introduce hearsay

evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence—or if it didn't miss it, would ignore it.

*United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984).

In the present case it would strain credibility to suggest that the prosecutor did not expect Brenda to repeat her lack of knowledge of the incident, or deny facts recited in her June 17 statement. As in *Brehmer*, although the substance of the extrajudicial statements alleged to have been made by the witness was an important element of the prosecution's case, i.e., motive and identity, there was no affirmative damage done to the prosecution's case by the witness' answers.

> "The rule allowing a party to impeach his own witness may not be used as an artifice by which inadmissible matter may be gotten to the jury through the device of offering a witness whose testimony is or should be known to be adverse in order, under the name of impeachment, to get before the jury for its consideration a favorable ex parte statement the witness had made."

*State v. Brehmer, supra* at 44, 317 N.W.2d at 893.

Where, as in this case, the need for impeachment is small or nonexistent and the danger that the prior inconsistent statement will be considered substantively is great, the statement should be excluded. *State v. Price*, 202 Neb. 308, 275 N.W.2d 82 (1979).

The appellee argues that even if the admission of the impeaching evidence was erroneous, no substantial miscarriage of justice is shown to have occurred, and therefore the case should not be reversed. Neb. Rev. Stat. § 29-2308 (Cum. Supp. 1984). We are not so convinced, nor are we prepared to say that the impeaching evidence had no influence on the jury's verdict. Prejudice, disguised as impeachment, appears to have slipped into this case. The case must be reversed for a new trial. In view of the result it is not necessary to discuss the second assignment of error.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., concurs in the result.