STATE OF NEBRASKA, APPELLEE, V. GARY A. KEITHLEY,
APPELLANT.
418 N.W.2d 212

Filed January 15, 1988.   No. 87-078.

James Martin Davis of Dolan & Davis, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder, for appellee.

BOSLAUGH, CAPORALE, and SHANAHAN, JJ., and ROWLANDS, D.J., and COLWELL, D.J., Retired.

BOSLAUGH, J.

The defendant was convicted of second degree murder in the stabbing death of William Weiner in 1959 and was sentenced to imprisonment for 20 years. The defendant has appealed and contends that the trial court erred in allowing the defendant's wife to testify against him and as to privileged communications between them, in allowing the State to call and examine two witnesses solely for the purpose of impeachment, and in that

the evidence is insufficient to support the verdict.

The record shows that at approximately 3 p.m. on December 24, 1959, officers of the Omaha Police Department were called to a pawnshop located at 503 North 16th Street in Omaha. Upon arriving at the scene they discovered the owner of the pawnshop, William Weiner, lying on the floor alongside a display counter. Police observed blood on Weiner's face and on the floor of the shop. Weiner was taken to the hospital, where he died at 5:50 p.m. Prior to his death Weiner described his assailant, to an Omaha police officer, as being a white male in his twenties, approximately 6 feet tall and 155 pounds, with brown hair. An autopsy later showed that Weiner died of stab wounds to the chest and abdomen and severe injury to the head.

On February 25, 1971, Sandra Keithley, wife of the defendant, contacted the Omaha Police Department regarding Weiner's death and spoke with Lt. Foster Burchard. Burchard testified that during their conversation on February 25, Mrs. Keithley told him that the defendant had a gun which he had told her he had taken from Weiner the day Weiner was killed. She described it as a short-barrel, six-shot revolver, possibly a .38 caliber. Following this conversation Burchard checked the file on the Weiner homicide and found that Weiner had a .32-caliber Hopkins and Allen revolver registered to him and that the detectives at the time of the investigation had noted that the gun was not present at the pawnshop or on the body. Burchard also located the registration card which showed the serial number of the revolver to be No. 6698. The following day Mrs. Keithley called back, and met with Burchard in person that evening. Burchard testified that she repeated to him the story she had given during the first phone call, namely, that in December 1959, the defendant, who was not her husband at the time, picked her up at her parents' home in Avoca, Iowa; that the defendant was wearing a T-shirt, black leather jacket, and blue jeans, which had blood on them; and that she washed the blood out. She further told Burchard that the defendant told her that he had stopped by Weiner's pawnshop to get her a roller skate case. He told her that he was looking at some knives when he got into a dispute with the pawnbroker, hit him in the head with some object, and ran out the door.

Burchard next met with Mrs. Keithley at the police station on March 1, 1971. At that time she gave a formal statement in which she gave the same version of the facts as previously told to Burchard. This statement was not allowed into evidence. Burchard obtained a search warrant for the gun described by Mrs. Keithley, which he retrieved from the Keithley home. The gun was a .32-caliber Hopkins and Allen, serial No. 6698, which was the same gun registered to the deceased. On the same day Mrs. Keithley drove with Burchard to the location of Weiner's pawnshop in 1959. She pointed to the building and said the defendant had showed her the building shortly after December 1959.

Mrs. Keithley's next statement to the police was on January 29, 1986, the contents of which are not apparent from the record. This statement was not offered into evidence.

On February 10, 1986, an information was filed charging the defendant with second degree murder in connection with Weiner's death.

Mrs. Keithley testified at the preliminary hearing on February 7, 1986, and again implicated her husband in the murder. This statement was not admitted into evidence. Shortly before trial Mrs. Keithley signed a statement reflecting a conversation with defense counsel in which she told defense counsel that her previous statements had been false. The prosecution was then notified that she had repudiated her earlier statements. This statement was not admitted into evidence. All of the above-mentioned statements were used for impeachment purposes during the trial.

After trial to a jury the defendant was found guilty of second degree murder.

The defendant's first assignment of error alleges that the district court erred in allowing Mrs. Keithley to testify about privileged communications between herself and the defendant and that the court erred in allowing Mrs. Keithley to testify at all. The statutes concerning the testimony of a spouse contain two separate provisions. Neb. Rev. Stat. § 27-505(1) (Reissue 1985) governs privileged communications between spouses and provides in pertinent part:

Neither husband nor wife can be examined in any case as

to any confidential communication made by one to the other while married, nor shall they after the marriage relation ceases be permitted to reveal in testimony any such communication while the marriage subsisted except as otherwise provided by law.

The defendant argues that the privilege statute in effect in 1959 should govern the admissibility of statements made by him to Mrs. Keithley on the day Weiner was killed. The statute in effect in 1959 provided:

Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal in testimony any such communication made while the marriage subsisted except as otherwise provided by law.

Neb. Rev. Stat. § 25-1204 (Reissue 1956).

Under either statute the defendant's contention that the conversation of December 24, 1959, was privileged must fail. The defendant and Mrs. Keithley were not married on that date. That they later married is irrelevant.

The defendant also argues that Mrs. Keithley should not have been permitted to testify at all. The statute applicable in 1959 and the statute applicable today contain different provisions. In 1959 the statute provided in pertinent part: "A husband or wife can in no case be a witness against the other, except in a criminal proceeding where the crime charged is rape, adultery, bigamy, incest, or any crime committed by the one against the other . . . ." Neb. Rev. Stat. § 25-1203 (Reissue 1956). This statute was repealed in 1975.

Section 27-505(3)(a), as amended in 1984, now permits a spouse to testify against the other spouse in any criminal case where the crime charged is a crime of violence. Thus, prior to 1984, Mrs. Keithley could not testify against her husband where the crime charged was murder. The defendant argues that as to him the 1984 amendment is an ex post facto law.

The defendant cites *In re Estate of Rogers*, 147 Neb. 1, 22 N.W.2d 297 (1946), for authority that "an 'ex post facto' law is one which imposes a punishment for an act which was not punishable when committed, imposes additional punishment,

*or changes Rules of Evidence by which less or different testimony is sufficient to convict.*" (Emphasis supplied by appellant.) Brief for Appellant at 10. The above language is taken from 12 C.J. *Constitutional Law* § 803 (1917), and was used to demonstrate that the prohibition against ex post facto laws applies only to penal or criminal matters, and not to the taxing of decedents' estates which was involved in that case. The case did not contain any ex post facto issues concerning evidentiary rules.

In *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), we discussed and rejected the argument which is made by the defendant in this case. We held in *Palmer* that no one has a vested right in a procedure and that procedural matters can be changed at any time before trial and are binding on the defendant. Changes in the rules of evidence are not ex post facto laws where the alterations

> "do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt, but—leaving untouched the nature of the crime and the amount or degree of proof essential to conviction—only remove existing restrictions upon the competency of certain classes of persons as witnesses . . . ."

*Palmer, supra* at 292, 399 N.W.2d at 716, quoting from *Hopt v. Utah*, 110 U.S. 574, 4 S. Ct. 202, 28 L. Ed. 262 (1884). It is clear that under *Palmer* it was not error for the district court to allow Mrs. Keithley to testify.

The defendant's second assignment of error is that the district court erred in allowing the State to call as witnesses, solely for the purpose of impeachment, Mrs. Keithley and Lieutenant Burchard, when the only effect of their testimony was to present to the jury inadmissible hearsay evidence which could be considered by the jury only as substantive evidence.

The defendant relies on *State v. Marco*, 220 Neb. 96, 368 N.W.2d 470 (1985), to argue that Mrs. Keithley was improperly called as a witness and improperly impeached. In *Marco* this court held that the rule allowing a party to impeach his or her own witness may not be used as an artifice by which inadmissible matter may be revealed to the jury through the

device of offering a witness whose testimony *is or should be known to be adverse* in order, under the name of impeachment, to get before the jury a favorable extrajudicial statement previously made by the witness. The *Marco* case involved a statement given by the daughter of a man accused of attempted first degree murder. In her statement she implicated her father in the shooting. She later gave additional statements contradicting her first statement, including testimony at a previous court proceeding in which she either denied knowledge of the events or denied memory of the events referred to in her first statement. At trial she was ordered to testify, at which time she again denied the validity of her first statement. She was then impeached by use of her first statement, and the incriminating information was placed before the jury. We held that "it would strain credibility to suggest that the prosecutor did not expect [the witness] to repeat her lack of knowledge of the incident, or deny facts recited in her [first] statement." 220 Neb. at 101, 368 N.W.2d at 474.

In the present case, however, we believe it does not strain credibility to expect that Mrs. Keithley might again implicate her husband. From 1971 to 1986 she made a number of statements placing the defendant at the murder scene, describing his bloody clothes, and repeating his statements to her that he had become angry at the pawnbroker and beaten him. Only days before trial did she state that she had been lying since 1971. This recantation of her previous statements does not rise to the certainty of adverse testimony that was involved in the *Marco* case. The witness' prior statements in *Marco* made it clear that the witness would *not* testify favorably for the prosecution. Mrs. Keithley's prior statements, along with her recantation, only made it unclear *how* she would testify. We conclude that the district court properly allowed Mrs. Keithley to be called as a witness.

Lieutenant Burchard was called as a witness for at least two reasons: to testify about his contact with the gun registered to the deceased and found at the defendant's home, and to impeach Mrs. Keithley's testimony at trial regarding the statements she gave in 1971. She testified at trial that she called the Omaha police in 1971 to inquire about registering a gun. She

further testified that she first saw the gun sometime after May 1967 and that the defendant told her he had purchased the gun. She testified that when she called the police regarding registration she was told that they wanted to talk with her about a homicide and that she responded to their request by telling them that she knew nothing about a homicide. When she later met with Burchard, she testified that she told the police whatever they wanted to know so she could get the defendant out of her life.

To impeach her testimony, Burchard was called as a witness to describe the events in 1971. He testified that during their first conversation she told him that her husband had a gun which he had taken from a pawnbroker in 1959. He testified that she told him that the defendant had picked her up at her house in Avoca, Iowa, that he had bloody clothes, that he had been in a dispute with a pawnbroker while looking at some knives, and that he had hit the pawnbroker over the head. He testified that it was not until after she had given him this information that he checked the records and discovered the gun was the same gun registered to Weiner.

The purpose of Burchard's testimony was to discredit Mrs. Keithley's testimony that she had only called the police to register the gun and that the police had informed her of the murder. The district court properly overruled the hearsay objections of the defense for the reason that the statements were used to impeach the credibility of a witness, and not introduced as substantive evidence.

The defendant objects in his brief to the use of the impeachment evidence by the prosecutor during his closing argument as if it were substantive evidence. He argues that this was a tactic designed purposely to mislead the jury. The record shows no objection was made at any time during the closing argument. Failure to assert a timely objection at the time of trial constitutes a waiver of the objection. *State v. Carter*, 226 Neb. 636, 413 N.W.2d 901 (1987); *State v. Daniels*, 220 Neb. 480, 370 N.W.2d 179 (1985).

The remaining question is whether, excluding testimony used only to attack credibility and not admitted as substantive evidence of the crime charged, there was sufficient evidence to

support the verdict. The defendant contends in his third assignment of error that there was not. The defendant was charged under the second degree murder statute in effect at the time of the crime, which stated that "[w]hoever shall purposely and maliciously, but without deliberation and premeditation, kill another . . . shall be deemed guilty of murder in the second degree . . . ." Neb. Rev. Stat. § 28-402 (Reissue 1956). Malice, in the context of second degree murder, denotes a condition of the mind which is manifested by the intentional doing of a wrongful act without just cause or excuse and is " ' "any willful or corrupt intention of the mind." ' " *State v. Moniz*, 224 Neb. 198, 204, 397 N.W.2d 37, 41 (1986); *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983). Malice and intent may be inferred from the evidence relating to the circumstances of the criminal act. *State v. Williams*, 226 Neb. 647, 413 N.W.2d 907 (1987); *State v. Moniz, supra; State v. Rowe, supra.*

Although Mrs. Keithley's testimony at trial varied as to the events occurring in 1959, she did testify, at one time or another during trial, that the defendant picked her up from her Iowa home midafternoon or evening of December 24, 1959; they drove back to Omaha to his parents' home, where the defendant asked her to wash some stained clothes; the defendant told her they were bloodstains; the defendant told her the bloodstains on his clothing were from a fight; the defendant told her the fight had occurred at a pawnshop; the defendant told her that he had gotten into a fight at the pawnshop because the man accused him of stealing, that they struggled, and that he (the defendant) hit the man in the back of the head; she had heard on the radio or the news that the pawnbroker was in critical condition; and the defendant told her it was the same pawnshop.

In addition, Burchard testified that the gun registered to the deceased was found in the defendant's home. Finally, the defendant matched the description of the assailant given by Weiner before he died. This evidence was sufficient for the jury to find beyond a reasonable doubt that the defendant purposely and maliciously killed Weiner. The judgment of the district court is affirmed.

AFFIRMED.