THE PELICAN, INC., Appellant,

v.

William A. DOWNEY, Appellee.

No. 29A04-8911-CV-527 [1].

Court of Appeals of Indiana, First District.

March 12, 1991.

1. This case was reassigned to this office on January 2, 1991.

Rick D. Meils, Joseph P. Maguire, Meils Zink Thompson Dietz & Bola, Indianapolis, for appellant.

John E. Eisele, Jeffrey A. Lockwood, Schuyler Eisele & Lockwood, Anderson, for appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

The Pelican, Inc. appeals from the judgment in favor of William A. Downey in his personal injury suit for damages. We affirm.

## ISSUE

The issue on appeal is whether the trial court erred by not allowing impeachment and leading questions of a witness, Kelly Whitehead ("Kelly"), during The Pelican's case-in-chief and by not allowing The Pelican to present the testimony of Kathy Swain ("Swain").

## FACTS

The facts most favorable to the verdict are that Downey met some friends at The

Pelican restaurant on November 27, 1985 between 7:00 and 8:00 p.m. Downey's girl-friend, Paula Jarrett, was working in the lounge as a waitress. During the course of the evening, someone at Downey's table was served a Coke in a hurricane glass. Later, Paula bumped into Downey's table, at which Danny and Kelly Whitehead and his sister, Barbara Collins were seated. The glass of Coke overturned and the glass shattered. A piece of the glass lodged in Downey's left hand, severely cutting it. The Whiteheads, Paula, and Barbara immediately took Downey to the hospital.

Dr. Kiefhaber treated Downey for his injuries. Dr. Kiefhaber testified Downey told him he was drinking in a bar and had set the glass down firmly when it shattered and cut his hand. Downey suffered a deep laceration to his left palm which severed the tendons and nerves. Dr. Steichen, an Indianapolis hand surgeon, operated on Downey to repair the tendons and nerves. Dr. Steichen testified Downey sustained a permanent partial impairment of nineteen percent of his left hand, which was Downey's dominant hand.

Downey filed his complaint for damages on November 2, 1987. At trial, The Pelican attempted to impeach Kelly, The Pelican's own witness. Acting upon Downey's objection, the court refused to allow leading questions to show a prior inconsistent statement. The court also excluded Swain's testimony. In an offer to prove, Swain presented testimony of Kelly's prior inconsistent statement. The jury found in favor of Downey and awarded him $25,500. The Pelican appeals the verdict.

## DISCUSSION AND DECISION

The Pelican raises several arguments to show the court erred in disallowing impeachment of Kelly. First, The Pelican contends the court abused its discretion and denied it a fair trial when it refused to permit leading questions. The Pelican maintains Kelly was a hostile witness, therefore leading questions should have been allowed in order to impeach her. The Pelican recognizes the court has discretion to permit leading questions which decision will not be reversed without a showing of abuse of discretion and resulting prejudice. *Bussey v. State* (1989), Ind., 536 N.E.2d 1027, 1029.

■ A witness may be impeached when he shows his hostility during examination and his friendliness to the opponent, and is informed of the time and place of his contradictory statement so he may admit or deny it. *Slayton v. State* (1985), Ind., 481 N.E.2d 1300, 1303. During direct examination, Kelly stated she had told Swain, her supervisor, she would need a few days off work to go to trial for a friend whose hand had been cut by a glass while at a restaurant. She also testified she had not witnessed the accident. The Pelican began to ask a leading question regarding a prior inconsistent statement. The court held The Pelican had not shown Kelly was a hostile witness; therefore, leading questions could not be used. In an offer to prove, Kelly denied making prior inconsistent statements to Swain. The prior inconsistent statements that The Pelican sought to reveal were: that Kelly admitted to Swain that she had observed the occurrence, that Downey was intoxicated and had been refused any more alcohol, that Downey had slammed the glass on the table because he was mad, and that Kelly was going to lie in court about the occurrence and state that a waitress bumped the table causing the glass to overturn.

■ The Pelican argues the court erroneously denied impeachment of Kelly by means of her prior inconsistent statements. Our supreme court has held it is not necessary that one's witness be declared hostile before commencing an impeachment. *Bowling v. State* (1986), Ind., 493 N.E.2d 783, 785. A witness's hostility is apparent when his testimony exculpates the opponent and the witness has admitted, explained, or denied the prior statement. *Id.* Kelly's testimony does not fall within the scope of *Bowling.* Her testimony was that she did not witness the accident. Such testimony does not exculpate Downey.

The record establishes Kelly and her husband were close friends of the Downeys. However, this is insufficient to show hostility. We find the court did not abuse its discretion when it denied the use of leading questions of The Pelican's own witness, whom had not been shown to be hostile.

Despite the lack of hostility, "Indiana grants the right of a party to impeach his own witness, who has testified against him, by proof of contradictory statements." *Slayton*, 481 N.E.2d at 1303; IND.CODE § 34-1-14-15. However, when a witness denies making the prior inconsistent statement, the statement is inadmissible as substantive evidence. The statement, though, is admissible to impeach the witness. *Cox v. State* (1986), Ind., 493 N.E.2d 151, 158–159. The Pelican claims Kelly's prior statements were admissible for impeachment purposes.

Notwithstanding admissibility for impeachment purposes, we do not find the court abused its discretion in excluding evidence of the prior statements. The Pelican was not prejudiced by its exclusion. The prior statements were available only for impeachment purposes because Kelly denied making the statements. Nothing of particular substance or great importance arose from Kelly's testimony. Therefore, The Pelican was not prejudiced by being prevented from impeaching her. Additionally, the excluded statements were merely cumulative evidence of Dr. Kiefhaber's testimony. Exclusion of cumulative evidence is not error. *McClamroch v. McClamroch* (1985), Ind.App., 476 N.E.2d 514, 518, *trans. denied.*

We find no abuse of discretion by the court's refusal to allow leading questions of Kelly about prior inconsistent statements.

Next, the Pelican asserts Kelly's prior statements were admissible as evidence of a conspiracy. *Wallace v. State* (1981), Ind., 426 N.E.2d 34, 41. The trial court has great latitude in determining whether sufficient evidence supports the existence of a conspiracy to justify the admission of statements of co-conspirators.

*Id.* The trial court did not find sufficient evidence of a conspiracy, and therefore, refused to admit the hearsay evidence regarding the prior statements. We find no abuse of discretion in that decision.

We also refuse to reverse the court's decision that the prior statements were collateral evidence. In our review, we have concluded that the evidence is not properly admissible for any purpose independent of the contradiction of the witness. *See Andrews v. State* (1988), Ind.App., 529 N.E.2d 360, 365, *cert. denied,* — U.S. ——, 110 S.Ct. 281, 107 L.Ed.2d 261. Therefore, the evidence is collateral, and the trial court did not err in excluding it on this ground.

Because of our above determinations regarding the prior statements, we find the exclusion of Swain's testimony was not an abuse of discretion as it was offered solely for impeachment purposes, and such exclusion did not prejudice The Pelican. We agree with Nebraska that "the rule allowing a party to impeach his own witness may not be used as an artifice by which inadmissible matter may be revealed to the jury through the device of offering a witness whose testimony is or should be known to be adverse in order, under the name of impeachment, to get before the jury a favorable extrajudicial statement previously made by the prior witness." *See State v. Keithley* (1988), 227 Neb. 402, 406–07, 418 N.W.2d 212, 215, (citing *State v. Marco* (1985), 220 Neb. 96, 368 N.W.2d 470). We refuse to reverse the trial court to permit improper use of the impeachment rule.

Affirmed.

CONOVER and MILLER, JJ., concur.