Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
02/23/2016 08:25 AM CST

State of Nebraska, appellee, v.
LaRonn R. Tyson, appellant.
___ N.W.2d ___

Filed February 23, 2016.    No. A-15-054.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

5. **Impeachment: Testimony: Prior Statements.** One means of attacking the credibility of a witness is by showing inconsistency between his or her testimony at trial and what he or she said on previous occasions.

6. ____: ____: ____. The trial court has considerable discretion in determining whether testimony is inconsistent with prior statements.

7. ____: ____: ____. As a general rule, a witness makes an inconsistent or contradictory statement if he or she refuses to either deny or affirm that he or she did, or if he or she answers that he or she does not remember whether or not he or she made it.

8. **Evidence: Hearsay.** It is elementary that out-of-court statements offered to prove the truth of the matter asserted are hearsay.

9. **Rules of Evidence: Impeachment: Prior Statements.** Prior inconsistent statements are admissible as impeachment evidence, but they

are not admissible as substantive evidence, unless they are otherwise admissible under the Nebraska Evidence Rules.

10. **Trial: Appeal and Error.** Absent an abuse of discretion, a trial court's ruling will be upheld on appeal.

11. **Criminal Law: Trial: Juries: Appeal and Error.** In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant.

12. **Verdicts: Juries: Appeal and Error.** Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

13. **Sentences.** When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. The sentencing court is not limited to any mathematically applied set of factors.

14. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

James J. Regan for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

IRWIN, INBODY, and RIEDMANN, Judges.

INBODY, Judge.

## INTRODUCTION

LaRonn R. Tyson appeals his conviction by a jury of possession of a deadly weapon by a felon and the sentence imposed

by the Douglas County District Court thereon. For the reasons that follow, we affirm Tyson's conviction and sentence.

## STATEMENT OF FACTS

On June 18, 2014, the State filed an information charging Tyson with one count of possession of a deadly weapon by a prohibited person, a Class ID felony, in violation of Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2014), and one count of possession of a stolen firearm, a Class III felony, in violation of Neb. Rev. Stat. § 28-1212.03 (Cum. Supp. 2014).

A jury trial was held on the matter. The parties stipulated to several items: (1) that Tyson's DNA was taken from Tyson's person and from the gun found at the scene and that the DNA results indicated the presence of human DNA but did not result in scientifically reliable proof that it was Tyson's DNA, (2) that Tyson was a "prohibited person" as defined in § 28-1206, and (3) that the parties agreed the items in evidence were properly handled.

The State called Omaha police officer James Holtmeyer to the stand. Holtmeyer, a 6-year veteran of the Omaha Police Department, testified that he is assigned to the uniform patrol bureau. On May 17, 2014, Holtmeyer was assigned to patrol and conduct surveillance when he received a dispatch call, at approximately 4:30 p.m., regarding an alleged trespassing at a residence on Stone Avenue in Omaha, Nebraska. Upon arrival at the residence, Holtmeyer observed two individuals on the front porch of the residence and several other people inside of the residence. Holtmeyer approached the residence and observed that one of the individuals was male and one was female and that the male was wearing "blue jeans, a red jacket, and a black and gray San Antonio Spur[s] baseball cap." Holtmeyer identified Tyson as that individual. Holtmeyer also smelled a strong odor of marijuana. Holtmeyer testified that Tyson appeared nervous and was clutching his waistband with his right hand on top of his jacket. Holtmeyer asked Tyson for his name and indicated to Tyson that he smelled the

odor of marijuana and asked permission to conduct a pat-down search of his person for weapons. Holtmeyer testified that Tyson immediately stood up and jumped over the railing of the front porch.

Holtmeyer testified that he turned and ran down the porch stairs in pursuit of Tyson. Holtmeyer testified that Tyson ran toward the back of the residence between a wooden privacy fence and detached garage. Holtmeyer testified that he did not have visual contact with Tyson as he jumped off the porch, but followed him and could see his back. Holtmeyer also could not see Tyson the entire time he was running through the passageway. Holtmeyer saw Tyson jump over a chain link fence and stumble to his knees. Tyson's black and gray San Antonio Spurs baseball cap fell into the yard. Holtmeyer testified that at that point, he was unable to fit through the passageway and ran east and then southbound around another house. Holtmeyer ran two blocks to Laurel Avenue, where two officers observed Tyson running and apprehended him.

Once Tyson was arrested, Holtmeyer retraced the path that Tyson had taken, because he expected that Tyson had tossed some type of weapon or narcotic. Holtmeyer testified that in his line of work, he has observed that people generally run to delay apprehension and that it is usually weapons or narcotics related. Holtmeyer found the red jacket that Tyson had been wearing, which contained no weapons or narcotics, and along the path, he found Tyson's black and gray San Antonio Spurs baseball cap. Near the wooden fence that separates the yards of two residences on Stone Avenue, Holtmeyer also found a black Heckler & Koch P30 9-mm firearm. Holtmeyer admitted that he did not have Tyson in his field of vision the entire pursuit and that Tyson could have tossed the gun during that time.

Cole Johannsen, an Omaha police officer, testified that he was on patrol on May 17, 2014, when he received a call to assist officers. Johannsen arrived at the specified address

on Stone Avenue, exited his police cruiser, and observed Holtmeyer speaking with two individuals on the front porch. One of those individuals, later identified as Tyson, was male and was wearing a red jacket, and as Johannsen approached the porch, that individual jumped off the porch and ran back toward the garage. Johannsen testified that he ran after Tyson and did not lose sight of him until Tyson ran through the area near the wooden fence. Johannsen continued to the back of the house and through the gate where he observed Tyson running southbound through the yards. Johannsen testified that he lost Tyson when Tyson ran through a thicket. When Johannsen made it through the thicket, he noted a black male walking eastbound on the south side of Laurel Avenue in a blue T-shirt. Johannsen testified that the male walking looked suspicious. Johannsen's attention was directed to the male by two young children who told Johannsen that the male in the blue shirt had taken his red jacket off. At that point, Tyson took off running and Johannsen pursued him again. Timothy Bauman, an Omaha police officer, arrived in his police cruiser and exited with his gun pointed at Tyson. Tyson stopped running, put his hands up, and lay on the ground.

Once Tyson was taken into custody, Johannsen began retracing his steps and located the red jacket in a driveway off of Laurel Avenue near the thicket. Johannsen testified that Tyson appeared to be "running full steam" and did not appear to be holding his waistband. During the pursuit, Johannsen did not see Tyson throw anything.

James Hayley, an Omaha police officer, was also involved in the events on May 17, 2014. Hayley interviewed several female parties who indicated that they were renting the residence and had taken a no trespass notice down from the door. Haley testified that he could smell a strong odor of marijuana coming from the residence. Hayley went into the residence to make contact with the renter when he heard a notice on his police radio of "a party running southbound through the houses." During his investigation, Hayley observed a

San Antonio Spurs baseball cap and a firearm located behind a residence on Stone Avenue.

Bauman testified that he was dispatched to the scene with the other officers on May 17, 2014. Bauman drove his police cruiser to the specified address on Stone Avenue, where Holtmeyer was talking to a black male wearing "a black [baseball] hat with a red and white coat" sitting on the left side of the porch. As Bauman approached the residence, that individual, Tyson, jumped off the porch and ran southbound between the garage and wooden fence. Bauman lost sight of Tyson as he rounded the corner of the garage in between the garage and the fence. Bauman began pursuit of Tyson, but testified that because he would not be able to get through the fence quickly, he turned around and headed to his police cruiser. Bauman did not see Tyson throw anything. Bauman headed southbound and found Tyson running down Laurel Avenue. Bauman testified that Tyson "was [no longer] wearing a coat or a hat." Bauman took Tyson into custody and did not find any weapons or narcotics on his person. Bauman testified that he was speaking with Tyson, who appeared nervous and was looking to see what the officers who began backtracking his path were doing.

Todd Andrews testified that in August 2012, he purchased a Heckler & Koch P30 9-mm firearm from a store in Omaha. Andrews obtained a permit to purchase the firearm, purchased the firearm, and took his receipt and the firearm to the police department to register it. Shortly thereafter, the firearm was stolen from his home. Andrews testified that someone broke into his home and stole several items, including the firearm which had a specific serial number. Andrews reported the firearm missing to the police. In May 2014, Andrews received a call from the police department that a firearm had been recovered. Andrews later discovered that the weapon was his firearm, which matched the description and serial number of his gun. Andrews testified that his firearm would not fit into his pocket, and although unlikely, it might fit in a waistband.

Brandee Foster testified that she has known Tyson since 2010. Foster was at the residence on Stone Avenue helping a family friend move on the day that Tyson was arrested. Foster took a video of the circumstances which was played to the jury. Foster testified that in the video, Tyson is wearing a red jacket, a "black hat," and "some dark colored jeans." Foster observed the police approach the residence and ask for a lease for the individual whom they had just helped move. Foster explained that Tyson "was asleep on the porch" before he ran. Foster testified that she was with Tyson most of the day and that he did not have a gun.

The matter was submitted to the jury, which found Tyson guilty of possession of a deadly weapon by a prohibited person, but not guilty of possession of a stolen firearm. The district court accepted the verdict and adjudged Tyson guilty of possession of a deadly weapon by a prohibited person. A presentence investigation report was ordered and received. Thereafter, the district court sentenced Tyson to 16 to 20 years' imprisonment with 243 days' credit for time served. It is from this order that Tyson has timely appealed.

## ASSIGNMENTS OF ERROR

Tyson assigns that the district court erred by refusing to allow him to present evidence of inconsistent statements in accordance with Neb. Rev. Stat. § 27-801(4)(a)(i) (Reissue 2008) and by imposing an excessive sentence.

## STANDARD OF REVIEW

[1,2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013); *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court,

an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

[3,4] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Berney*, 288 Neb. 377, 847 N.W.2d 732 (2014). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Bauldwin*, 283 Neb. 678, 811 N.W.2d 267 (2012).

## ANALYSIS

*Prior Inconsistent Statements.*

Tyson argues that the district court erred by refusing to allow him to present prior inconsistent statements made by Holtmeyer as substantive evidence despite the fact that Holtmeyer testified at trial and was subject to cross-examination. For the reasons that follow, we reject Tyson's claim that the district court's evidentiary ruling was erroneous, although for reasons different than those of the district court. It is a longstanding rule that if we reach the same conclusion as the district court—here, specifically that the evidence was properly excluded—we will affirm the order of the district court, although for a different reason. See *Boettcher v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997) (proper result will not be reversed on appeal merely because it was reached for wrong reasons; when record demonstrates that decision of trial court is correct, although such correctness is based on different ground from that assigned by trial court, appellate court will affirm).

[5-8] One means of attacking the credibility of a witness is by showing inconsistency between his or her testimony at trial and what he or she said on previous occasions. *State v. Marco*, 220 Neb. 96, 368 N.W.2d 470 (1985). The trial court has considerable discretion in determining whether testimony is inconsistent with prior statements. *Id*. As a general rule, a

witness makes an inconsistent or contradictory statement if he or she refuses to either deny or affirm that he or she did, or if he or she answers that he or she does not remember whether or not he or she made it. *Id.* See *State v. Burton*, 282 Neb. 135, 802 N.W.2d 127 (2011). See, also, e.g., *McAlinney v. Marion Merrell Dow, Inc.*, 992 F.2d 839 (8th Cir. 1993); *United States v. Rogers*, 549 F.2d 490 (8th Cir. 1976). It is elementary that out-of-court statements offered to prove the truth of the matter asserted are hearsay. § 27-801(3); *State v. Marco, supra*.

[9,10] Prior inconsistent statements are admissible as impeachment evidence, but they are not admissible as substantive evidence, unless they are otherwise admissible under the Nebraska Evidence Rules. *State v. Ballew*, 291 Neb. 577, 867 N.W.2d 571 (2015). See, *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007); *State v. Williams*, 224 Neb. 114, 396 N.W.2d 114 (1986). See, also, Neb. Rev. Stat. § 27-613 (Reissue 2008); § 27-801. Absent an abuse of that discretion, the trial court's ruling will be upheld on appeal. *State v. Ballew, supra*.

Tyson argues that the district court should have admitted the prior inconsistent statements as substantive evidence pursuant to § 27-801(4)(a)(i), which provides:

(4) A statement is not hearsay if:

(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (i) inconsistent with his testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . .

At trial, the district court found that the evidence was inadmissible, even though it was not hearsay, because the admission of the evidence required a sponsoring witness. At oral argument, Tyson did not set forth any arguments as to the sponsoring witness requirement. The State commented that there are no Nebraska cases involving a rule for a sponsoring

witness necessary for the admissibility of evidence under § 27-801(4)(a)(i), but, instead directed this court to *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980), and continued to argue that the district court was correct in its order, albeit for reasons different than those set forth by the district court.

We likewise have found no case law in Nebraska which holds that a sponsoring witness is necessary for the admissibility of prior inconsistent statements as substantive evidence pursuant to § 27-801(4)(a)(i). Our research of case law outside of Nebraska points to the necessity of a sponsoring witness in cases dealing with hearsay and the business records exception, but not in the context of prior inconsistent statements as substantive evidence. See, *U.S. v. Turner*, 189 F.3d 712 (8th. Cir. 1999); *Crane v. Crest Tankers, Inc.*, 47 F.3d 292 (8th. Cir. 1995); *U.S. v. Coohey*, 11 F.3d 97 (8th. Cir. 1993).

In *United States v. Dennis, supra*, one of the pertinent issues involved the defendant's objection to the trial court's admission of prior inconsistent statements. In *Dennis*, one of the witnesses testified before the grand jury that he saw the defendant with a gun, that the defendant had lent him money, and that the defendant had told him not to tell the grand jury; however, on direct examination at trial, the witness denied all of those facts and denied making or claimed not to recall making any of the previous statements. When confronted with the different testimony, the witness admitted to making the statements to the grand jury. The trial court denied the defendant's request to reread some of the prior inconsistent statements to the jury on the grounds that they were cumulative.

The Eighth Circuit found that the trial court properly determined that the witness' statements were inconsistent, but because the witness denied or could not recall those prior inconsistent statements, found that reading them to the jury was the proper method of placing the statements into evidence. The Eighth Circuit found:

> Laying the proper foundation for a prior inconsistent statement requires that the witness must be afforded an

opportunity to explain or deny the statement and that the opposing party must be afforded an opportunity to interrogate the witness concerning the statement. *Osborne v. United States*, 542 F.2d 1015, 1020 (8th Cir. 1976); *United States v. Martorano*, 457 F.Supp. 803, 811 (D.Mass. 1978) (denial of new trial), *rev'd on other grounds*, 610 F.2d 36 (1st Cir. 1979). Where a witness denies or cannot recall a prior inconsistent statement, that statement may be read to the jury for impeachment. *United States v. Rogers*, . . . 549 F.2d 490 [(8th Cir. 1976)]. But a witness who admits making a prior inconsistent statement is thereby impeached, and no further testimony is necessary. *United States v. Jones*, 578 F.2d 1332, 1340 (10th Cir.), *cert. denied*, 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978).

*United States v. Dennis*, 625 F.2d at 796.

However, the circumstances of the present case are distinguishable, as the defendant in *Dennis* sought to use the prior inconsistent statements as impeachment, not as substantive evidence, which has been established as two different methods of using prior inconsistent statements. Therefore, we decline to follow or substantiate the ruling of the district court that a sponsoring witness was required.

At trial, at the beginning of Tyson's cross-examination of Holtmeyer, the State objected to Tyson's counsel's questioning regarding Holtmeyer's testimony at the preliminary hearing.

> [Tyson's counsel:] So when you testified at your preliminary hearing —
>
> [The State]: I'm going to object as improper impeachment.
>
> [Tyson's counsel:] I'm not sure —
>
> THE COURT: I haven't heard the question yet. Are you —
>
> [Tyson's counsel:] What — I'm going to ask him this: You testified at the preliminary hearing under oath?
>
> [Holtmeyer]: Yes, sir.

[Tyson's counsel:] You didn't talk about losing sight of . . . Tyson on three different occasions then, did you?

[Holtmeyer:] No. You didn't ask me that question.

[Tyson's counsel:] You testified then that you suspect that when he threw the firearm over the fence was when he cut southwest out of your vision; wasn't that your testimony then?

[Holtmeyer:] That was my answer after being asked that specific question, about whether he could have then tossed the firearm when he cut southwest.

[Tyson's counsel:] Do you recall being asked: Do you think . . . Tyson came back at some point and put the gun there, and answering, as I testified earlier from the point where I witnessed him jump over the fence, fall to his knees and a hat fall off his head, he then cut immediately to the southwest of my vision, so that's when I suspect he threw the firearm over the fence?

[The State]: Judge, I would ask — I would renew my objection for improper impeachment.

[Tyson's counsel]: It's classic prior inconsistent statement under oath.

. . . .

THE COURT: Overruled. The answer stands.

The record then indicates that near the conclusion of the trial proceedings, Tyson's counsel announced that his final matter in the case involved reading the alleged prior inconsistent statements made by Holtmeyer, at the preliminary hearing, to the jury as substantive evidence.

[Tyson's counsel]: Your Honor, I'm just going to let the Court know that my — our case — the only remaining part of our case is going to be my intention to read prior inconsistent statements of Officer Holtmeyer, which were given at a preliminary hearing, and I think they're admissible.

They're not hearsay, they're admissible under Rule 27-801(4)(a), as prior statements made in a proceeding that meets the qualifications of that statute.

I've told [the State] what portions of it I intend to read, and, of course, that allows him to read consistent provisions if he so desires, the way I understand the statute.

The State objected, and after arguments were made by both parties, the district court ordered:

THE COURT: The opportunity to — the statement is not hearsay and can be admissible under this rule when — with a sponsoring witness. The witness was here, was subject to cross-examination, and that's when the rule would kick in in terms of that information not being hearsay to be — and requires the sponsoring witness.

That testimony does not come in in and of itself just being read in the record, so I guess there's a motion by the State at this time to exclude it?

[The State]: I would I guess formally make an oral motion in limine to exclude the reading of that portion of the preliminary hearing as outlined by [Tyson's counsel].

THE COURT: The Court is going to grant that . . . .

Tyson then made the following offer of proof:

So as an offer of proof in my request to offer a prior inconsistent statement pursuant to Nebraska Rev Stat [sic] 27-801(4)(A) [sic], I intended to read Officer Holtmeyer's testimony at a preliminary hearing held on June 17, 2014, . . . Page 16, Line 20.

The question being: So at that point then, you're going towards where you see him jump the Cyclone fence, question mark?

Answer: Yes. I was right behind him until I witnessed him leap over the fence and noticed that the space that separated the house and the neighbor's fence was only approximately a foot to a foot and a half wide, and my shoulders are wider than that.

Another prior inconsistent statement would be on Page 17 of that preliminary hearing, Line 14.

So did you say — do you think Tyson came back at some point and put his gun there, question mark?

Answer: No. As I testified earlier, from the point where I witnessed him jump over the fence, fall to his knees and the hat fall off his head, he then immediately cut to the southwest out of my vision, and so that's where I suspect he threw the firearm threw [sic] the fence.

The State then offered the portion of Holtmeyer's testimony from the preliminary hearing "for the limited purpose of a complete record for the Court of Appeals and Supreme Court . . . I'm not offering it as an exhibit for the jury." Tyson's counsel did not object to the offer. Thereafter, both parties rested their cases.

Upon our review of the record, we find that the statements Tyson wished to offer as substantive evidence did not meet the requirements prescribed by § 27-801(4)(a)(i). Clearly, Holtmeyer was available and testified at trial and was subjected to cross-examination regarding his statements, and the statements that Tyson wished to offer were made under oath at the preliminary hearing; however, the statements were not inconsistent with Holtmeyer's testimony given at the preliminary hearing and, therefore, were not admissible as substantive evidence under § 27-801(4)(a)(i). At the preliminary hearing, Holtmeyer was questioned about the setup of the scene where the incident occurred and was not questioned until trial about the times that he might have lost sight of Tyson. Holtmeyer did not deny that he testified at the preliminary hearing that he lost sight of Tyson after he jumped over the fence and moved southwest; instead, he indicated that he was not questioned at the preliminary hearing, as he was at trial, about any other times Holtmeyer may have lost sight of Tyson. Thus, Holtmeyer's statements at the preliminary hearing were not admissible as substantive evidence because they were not inconsistent statements.

[11,12] Furthermore, even if the district court did abuse its discretion by denying Tyson the opportunity to read to the

jury the statements made by Holtmeyer, which we have found it did not, that error would have been harmless. In a jury trial of a criminal case, harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in reaching a verdict adverse to a substantial right of the defendant. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). Harmless error review looks to the basis on which the jury actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *Id.*

Here, other evidence was presented which supported the jury's verdict. In fact, Holtmeyer's testimony at trial was much more harmful to the State's case at trial than at the preliminary hearing, because Holtmeyer gave detailed testimony at trial about the number of times he actually lost sight of Tyson during the pursuit. As Tyson argues, the evidence presented to the jury was not direct evidence of Tyson's having possession of the gun, but was circumstantial, including the police officer's testimony that Tyson was grasping his waistband and seemed nervous when law enforcement approached and that in law enforcement's experience, when an individual runs from law enforcement, it is generally because he or she is in possession of weapons or narcotics.

In conclusion, we therefore reject Tyson's claim that the evidentiary ruling was erroneous, although for reasons different than the district court. See *Boettcher v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997). This assignment of error is without merit.

*Excessive Sentence.*

Tyson argues that the district court abused his discretion in imposing an excessive sentence by failing to weigh the appropriate factors.

[13,14] When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. *State v. Stevens*, 290 Neb. 460, 860 N.W.2d 717 (2015). The sentencing court is not limited to any mathematically applied set of factors. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

The district court received and reviewed the presentence investigation report and considered all of the appropriate factors. The presentence investigation report indicates that at the time of sentencing, Tyson was 21 years old, had graduated high school, and had one dependent. Tyson's criminal history includes adjudications for theft by unlawful taking and possession of marijuana—1 ounce or less. As an adult, Tyson has been convicted of theft by receiving stolen property—$200 to $500, obstructing the administration of law, possession of a controlled substance, possession of marijuana—1 ounce or less, reckless driving, and attempted burglary. The presentence investigation report indicates that Tyson scored overall in the very high risk range on an LS/CMI assessment.

Tyson was convicted of possession of a deadly weapon by a felon, a Class ID felony, punishable by 3 to 50 years' imprisonment. See, § 28-1206(3)(b); Neb. Rev. Stat. § 28-105(1)(a) (Cum. Supp. 2014). The district court sentenced Tyson to 16 to 20 years' imprisonment, which is well within the statutory sentencing range. However, as set forth above, Tyson argues that the court failed to take into account the appropriate factors that he was only 19 years old at the time of the arrest, that no one actually saw him with a firearm, that there was no

evidence of violence, and that he was a high school graduate with a newborn son and a supportive family.

Our review of the record indicates that not only was Tyson's sentence within the statutory sentencing range, but that the district court considered all of the appropriate factors. Those factors include the seriousness of Tyson's offense and his criminal history, which included three felony convictions as an adult in only a short amount of time. Based upon the record, we cannot say that the district court abused its discretion by imposing a sentence within the statutory sentencing range. This assignment of error is without merit.

## CONCLUSION

In sum, we find that the district court did not abuse its discretion by sustaining the State's objection to Tyson's counsel's reading preliminary hearing testimony of Holtmeyer to the jury as substantive evidence and by imposing a sentence within the statutory sentencing range. Therefore, we affirm Tyson's conviction and sentence.

AFFIRMED.