court did so. Instead, Stevens generally asserts that the sentence of imprisonment exceeds the minimum period consistent with the protection of the public, the gravity of the offense, and his rehabilitative needs.[50] He emphasizes his significantly troubled childhood and what he characterizes as a "minimal criminal history."[51]

The record reflects that Stevens has been involved in the juvenile system since he was 12 years old and that he has been in and out of foster homes and other care facilities. He has struggled with drugs and alcohol and has been sent to a youth rehabilitation and treatment center. At the same time, however, the record shows that he consistently refuses to follow rules, that he has escaped from the treatment center, and that he has been involved in at least three felonies since 2010. We conclude the district court did not abuse its discretion in sentencing Stevens to 6 to 10 years' imprisonment.

## CONCLUSION

For the foregoing reasons, we affirm Stevens' conviction and sentence.

AFFIRMED.

---

[50] See *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991).

[51] Brief for appellant at 26.

---

STATE OF NEBRASKA, APPELLEE, V.
ALFREDO V. DOMINGUEZ, APPELLANT.
___ N.W.2d ___

Filed March 27, 2015.    No. S-14-047.

1. **Courts: Juvenile Courts: Jurisdiction.** In determining whether a case should be transferred to juvenile court, a court should consider those factors set forth in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2012). In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.

2. **Courts: Juvenile Courts: Jurisdiction: Evidence.** When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court.

3. **Trial: Joinder.** There is no constitutional right to a separate trial. Instead, the right is statutory and depends upon a showing that prejudice will result from a joint trial.

4. **Trial: Joinder: Proof: Appeal and Error.** The burden is on the party challenging a joint trial to demonstrate how and in what manner he or she was prejudiced.

5. **Trial: Joinder: Appeal and Error.** A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion.

6. **Trial: Joinder: Indictments and Informations.** The propriety of a joint trial involves two questions: whether the consolidation is proper because the defendants could have been joined in the same indictment or information, and whether there was a right to severance because the defendants or the State would be prejudiced by an otherwise proper consolidation of the prosecutions for trial.

7. **Trial: Joinder: Jurisdiction.** A court should grant a severance only if there is a serious risk that a joint trial could compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Prejudice serious enough to meet this standard may occur when evidence that the jury should not consider against a defendant and that would not be admissible against a defendant if a defendant were tried alone is admitted against a codefendant, when many defendants are tried together in a complex case and they have markedly different degrees of culpability, when essential exculpatory evidence that would be available to a defendant tried alone would be unavailable in a joint trial, or in other situations.

8. **Trial: Joinder: Proof.** To prevail on a severance argument, a defendant must show compelling, specific, and actual prejudice from the court's refusal to grant the motion to sever.

9. **Pleadings: Parties: Judgments: Appeal and Error.** On appeal, a denial of a motion to sever will not be reversed unless clear prejudice and an abuse of discretion are shown.

10. **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

11. **Witnesses: Impeachment.** Generally, the credibility of a witness may be attacked by any party, including the party who called the witness.

12. ____: ____. One means of attacking the credibility of a witness is by showing inconsistency between his or her testimony at trial and what he or she said on previous occasions. The trial court has considerable discretion in determining whether testimony is inconsistent with prior statements.

13. ____: ____. As a general rule, a witness makes an inconsistent or contradictory statement if he or she refuses to either deny or affirm that he or she did, or if he or she answers that he or she does not remember whether or not he or she made it.

14. **Evidence: Hearsay.** It is elementary that out-of-court statements offered to prove the truth of the matter asserted are hearsay. Thus, prior extrajudicial statements of a witness may be received into evidence for the purpose of assisting the jury in ascertaining the credibility of the witness, but unless they are otherwise admissible, they may not be considered as substantive evidence of the facts declared in the statements.

15. **Witnesses: Impeachment.** A party cannot impeach his or her own witness without limitation.

16. **Witnesses: Impeachment: Prior Statements: Juries.** The rule permitting a party to impeach his or her own witness may not be used as an artifice by which inadmissible matter may be gotten to the jury through the device of offering a witness whose testimony is or should be known to be adverse in order, under the name of impeachment, to get before the jury for its consideration a favorable ex parte statement the witness had made.

17. **Witnesses: Impeachment: Prior Statements: Case Disapproved.** A party's impeachment of its own witness under Neb. Rev. Stat. § 27-607 (Reissue 2008) with a prior inconsistent statement is not necessarily dependent upon a showing that the trial testimony sought to be impeached caused affirmative damage to the party's case. To the extent that *State v. Brehmer*, 211 Neb. 29, 317 N.W.2d 885 (1982), and *State v. Marco*, 220 Neb. 96, 368 N.W.2d 470 (1985), can be read to hold otherwise, they are disapproved.

18. **Jury Instructions: Appeal and Error.** The determination of whether a jury instruction is correct is a question of law, and an appellate court resolves questions of law independently of the determination reached by the trial court.

19. **Jury Instructions: Proof: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.

20. **Criminal Law: Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

21. **Sentences: Appeal and Error.** An appellate court will not disturb sentences that are within statutory limits, unless the district court abused its discretion in establishing the sentences.

22. **Sentences.** When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. The sentencing court is not limited to any mathematically applied set of factors.

23. ____. The appropriateness of a sentence is necessarily a subjective judgment
     and includes the sentencing judge's observation of the defendant's demeanor and
     attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County: Jodi Nelson, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, Jennifer M. Houlden, and Keenan Gallagher, Senior Certified Law Student, for appellant.

Jon Bruning, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

After a jury trial, Alfredo V. Dominguez was convicted of robbery and sentenced to imprisonment for 6 to 10 years. A codefendant, Malique A. Stevens, was tried with Dominguez and convicted of the same crime. In this appeal, Dominguez challenges various procedural and evidentiary rulings. We find no merit in any of his assignments of error and therefore affirm his conviction and sentence.

## BACKGROUND

On the evening of December 3, 2012, Janelle Yaunk parked her car in the lot of an apartment complex in north Lincoln, Nebraska, where a friend resided. As she walked toward the entrance of the building, she was approached by a young man who displayed a gun. Two other young men soon joined him. All three wore hoods over their heads and foreheads, and the rest of their faces, except their eyes, were covered with bandannas.

The man with the gun ordered Yaunk to give him money. When she said she had none, he struck her in the face with the gun, and she sat on the ground. One of the other two men took her car keys and cell phone from her. The men then made her start the car for them before they ordered her out of the vehicle and drove away in it.

Yaunk's friend arrived soon after, and they called the police. Shortly after the robbery was reported, a Lincoln police officer observed the stolen car and attempted to stop it. Three individuals in the car jumped out of it while it was still moving and ran away. The officer attempted to give chase but was unable to apprehend them. A cell phone that belonged to Orlando Neal was found in the abandoned vehicle. A pellet gun was found approximately 30 feet from the vehicle.

Neal eventually confessed to the robbery and was subsequently convicted and sentenced. In his initial statements to the police, he implicated Stevens and Dominguez as the other two participants in the robbery. In a subsequent deposition, however, Neal stated Stevens and Dominguez were not involved. Investigators found Stevens' fingerprints on the exterior of Yaunk's car, and this evidence was admitted at trial. Investigators also determined that DNA found on the pellet gun came from Dominguez, and this evidence was admitted at trial.

Both Stevens and Dominguez were 15 years old at the time the robbery was committed. They were each charged with one count of robbery in separate informations filed in the district court for Lancaster County. The cases were then consolidated for trial. Dominguez filed a motion to transfer his case to juvenile court. After conducting an evidentiary hearing on the motion, the district court found good cause to deny the transfer. After the fingerprint evidence implicating Stevens was discovered, Dominguez filed a motion requesting his trial be severed, but the motion was denied.

Yaunk testified and described the robbery. She identified Stevens and Dominguez in court as two of the perpetrators. Timothy Robinett, a Lincoln cabdriver, testified that the night of the robbery, he had been at a Walgreens store near the scene of the robbery and three young men had attempted to hire his cab. Over Stevens' objection, Robinett testified that he was 50- to 75-percent sure that Stevens was one of the young men. Robinett was unable to identify the others.

The State also called Dakota Grant, Stevens' brother. Grant was arrested on December 4, 2012, for the robbery, along with Stevens and Dominguez. He testified that before they

were arrested, he was with Stevens and Dominguez and heard them talking, but did not hear what they were saying. He also testified that he did not remember talking to a police officer after he was arrested. After a court recess, Grant stated that on December 4, Stevens and Dominguez were looking at a newspaper Web site and reading and talking about an article describing the robbery and carjacking. The State asked Grant whether he had told the police that Stevens and Dominguez had been talking about the actual robbery, not the article, but Dominguez' objection to the question was sustained.

Neal also testified at trial. He testified that he had come to Lincoln a few days before December 4, 2012, to meet up with Stevens and Dominguez. He testified that he was at the Walgreens store with Stevens and Dominguez the evening of December 3 and that they tried to get a cab, but that then they split up and went separate ways. Neal described how he committed the robbery of Yaunk and stated that the two persons with him at the time were not Stevens and Dominguez. He admitted that he was stealing the car in order to get to Dominguez' home, where he was staying, and he stated that he did not remember telling the police at the time of his arrest the names of the persons he was with during the robbery. Over objection, Neal was allowed to testify that he originally told the police that Dominguez was with him at the time of the robbery. Neal also testified that he used Stevens' name when talking to the police, but emphasized that he never said Stevens took part in the robbery.

After hearing all the evidence, the jury convicted both Stevens and Dominguez of robbery. Dominguez was subsequently sentenced to 6 to 10 years' imprisonment, and he filed this timely appeal.

## ASSIGNMENTS OF ERROR

Dominguez assigns, restated, that the district court erred in (1) denying his motion to transfer to juvenile court, (2) denying his motion to sever his trial, (3) allowing the State to impeach witnesses Grant and Neal with their prior inconsistent statements, (4) giving an aiding and abetting instruction, and (5) imposing an excessive sentence. He also assigns

that the evidence adduced at trial was insufficient to sustain the robbery conviction.

## ANALYSIS

### Motion to Transfer
### to Juvenile Court

[1] When Dominguez moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to Neb. Rev. Stat. § 29-1816(2)(a) (Cum. Supp. 2012). That statute provides the "customary rules of evidence shall not be followed at such hearing," and requires consideration of the 15 factors set forth in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2012). In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor.[1] It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.[2] After the court considers the evidence in light of the § 43-276 factors, "the case shall be transferred unless a sound basis exists for retaining the case."[3] The court is required to "set forth findings for the reason for its decision" on the motion to transfer.[4]

The burden of proving a sound basis for retention lies with the State.[5] Dominguez' caseworker, Angela Miles, testified for the State at the hearing on Dominguez' motion to transfer his case to juvenile court. Miles provided information about Dominguez' prior law violations and placements. She also described the services that had been provided to Dominguez in juvenile court. Summarized, the evidence showed that Dominguez had been placed in shelter care, a group home, foster care, and at a youth rehabilitation and treatment center

---

[1] See *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009).

[2] *Id.*

[3] § 29-1816(2)(a).

[4] § 29-1816(2)(c).

[5] *State v. Goodwin, supra* note 1.

(YRTC). He was in secure detention at least four times, and had run away from a placement three times since 2010. He has previously escaped from the YRTC. He was adjudicated for an assault in 2008, an assault in 2009, and various criminal mischief violations in 2010 and 2011. Dominguez was 11 years old when he committed his first assault. There was also evidence that Dominguez identifies with a gang.

Miles testified that Dominguez has received drug and alcohol testing, a psychological evaluation, an electronic monitor, individual therapy, counseling, medical care, and transportation services. In general, he was uncooperative with many of the services offered to him. Miles opined that the juvenile system had provided "all the services necessary" for Dominguez and that there were "no additional ones" that could be provided.

In its order denying Dominguez' motion to transfer, the district court considered each of the factors listed in § 43-276 that were applicable. It noted that Dominguez had been previously adjudicated in juvenile court on more than one law violation, and had been in out-of-home placements since January 2010 as a result of juvenile court adjudications. The court noted that he had been confined at the YRTC on at least two occasions and had been in secure detention on at least four occasions, but had been "on runaway status at least three different times since January of 2010" while under commitment to the Office of Juvenile Services, and had escaped from the YRTC following a commitment in July 2011. The court observed that Dominguez had failed to take advantage of many treatment options which had been offered to him, and had "a pattern of absconding from placements designed to provide needed treatment and engaging in conduct that places him and others at risk of harm."

The court further found that the charged offense was committed "in an aggressive and premeditated manner." Based upon Miles' testimony, the court determined that Dominguez "refused to cooperate with drug testing after testing positive, he refused to go to school, he refused to participate in individual therapy and he refused to participate in drug and

alcohol treatment." The court concluded that Dominguez "has demonstrated an unwillingness to participate in programming through the juvenile court over a nearly three-year span" and that "[h]is admitted involvement with a gang, coupled with his history of violence[,] leads this court to conclude that not only his best interests, but those of the public may require his custody or supervision extend well beyond his minority." The court noted that under Neb. Rev. Stat. § 29-2204(3) (Cum. Supp. 2012), it had the same dispositional alternatives as a juvenile court would have under the Nebraska Juvenile Code. After weighing the various factors, it concluded there was a sound basis for retaining jurisdiction over the case.

[2] When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court.[6] That is the case here. The record fully supports the reasoning of the district court in denying Dominguez' motion to transfer the case to juvenile court. We find no abuse of discretion in the court's disposition of the motion.

## Motion to Sever

Dominguez originally agreed to have his trial conducted jointly with the trial of Stevens. But after Stevens' fingerprints were found on the exterior of the robbery victim's car, Dominguez filed a motion to sever. The district court denied the motion, and Dominguez argues on appeal that the court erred in doing so.

[3-5] There is no constitutional right to a separate trial.[7] Instead, the right is statutory and depends upon a showing that prejudice will result from a joint trial.[8] The burden is on the party challenging a joint trial to demonstrate how and in what manner he or she was prejudiced.[9] A trial court's

---

[6] *Id*.

[7] *State v. Foster*, 286 Neb. 826, 839 N.W.2d 783 (2013).

[8] *Id*.; Neb. Rev. Stat. § 29-2002 (Reissue 2008).

[9] *State v. Foster, supra* note 7.

ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion.[10]

[6] According to § 29-2002(2), the court may order two or more informations to be tried together "if the defendants . . . are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." The court may order separate trials if "it appears that a defendant or the state would be prejudiced by a joinder of offenses . . . for trial together."[11] We have held:

> "[T]he propriety of a joint trial involves two questions: whether the consolidation is proper because the defendants could have been joined in the same indictment or information, and whether there was a right to severance because the defendants or the State would be prejudiced by an otherwise proper consolidation of the prosecutions for trial."[12]

[7] A court should grant a severance only if there is a serious risk that a joint trial could compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.[13] Prejudice serious enough to meet this standard may occur when evidence that the jury should not consider against a defendant and that would not be admissible against a defendant if a defendant were tried alone is admitted against a codefendant, when many defendants are tried together in a complex case and they have markedly different degrees of culpability, when essential exculpatory evidence that would be available to a defendant tried alone would be unavailable in a joint trial, or in other situations.[14]

[8,9] To prevail on a severance argument, a defendant must show compelling, specific, and actual prejudice from the court's

---

[10] *Id.*

[11] § 29-2002(3).

[12] *State v. Foster, supra* note 7, 286 Neb. at 836, 839 N.W.2d at 795, quoting *State v. McPherson*, 266 Neb. 715, 668 N.W.2d 488 (2003).

[13] See *State v. Foster, supra* note 7.

[14] *Id.*

refusal to grant the motion to sever.[15] On appeal, a denial of a motion to sever will not be reversed unless clear prejudice and an abuse of discretion are shown.[16]

Here, there is no question that the two cases arose out of the same act or transaction and were thus joinable for trial. Dominguez was therefore required to show that joinder was prejudicial in order to prevail on his motion to sever. He contends that prejudice existed because the State had fingerprint evidence linking Stevens to the stolen vehicle. He essentially concedes that this evidence would have been admissible against him even had he had a separate trial, but argues it was nevertheless prejudicial because of the possibility that the jury would find the evidence against Stevens so overwhelming that it would necessarily conclude Dominguez must have participated in the robbery as well.

We rejected a similar argument made by Stevens in his direct appeal, and we reach the same conclusion here. As we noted in *State v. Stevens*,[17] this was not a complicated case. The jury was well aware that it was to decide whether one or both of the defendants, Dominguez and Stevens, participated in the robbery. The mere fact that fingerprint evidence linked Stevens to the stolen vehicle was not specific and actual prejudice to Dominguez. The district court did not abuse its discretion in denying Dominguez' motion to sever.

## Impeachment of Grant and Neal

Dominguez argues that the State was allowed to elicit improper impeachment evidence from witnesses Grant and Neal. As noted, both Grant and Neal were also arrested in connection with the robbery.

The record is unclear as to whether Grant was ultimately charged. Neal, however, confessed and had been convicted prior to Dominguez' trial. The State called both Grant and Neal at trial. Grant testified that Stevens is his brother and

---

[15] *Id*.

[16] *Id*.

[17] *State v. Stevens, ante* p. 460, ___ N.W.2d ___ (2015).

that Grant was with Stevens and Dominguez on the morning after the robbery. Grant originally testified that during that time, he could hear Stevens and Dominguez talking, but was unable to hear what they were saying. He was then asked if he spoke to a police officer after he was arrested later that day, and he responded that he did not remember. The trial was then recessed for the day.

When Grant resumed his testimony on the following day, he stated that he heard Stevens and Dominguez talking and that they were looking at a newspaper Web site and discussing the carjacking/robbery. He recalled that they were talking about a news article reporting the crime, but not talking as if they committed the crime. Grant was then asked if, after his arrest, he told the police that Stevens and Dominguez had been talking about the actual crime. Dominguez' objection to that question was sustained.

Neal testified that he came to Lincoln from Omaha, Nebraska, on approximately December 2, 2012, to meet Stevens and Dominguez. The three had been close in the past, and he considered them as his brothers. He admitted that he was with Stevens and Dominguez at the Walgreens store near the scene of the crime and near the time of the crime and that they tried to get a cab there. He testified that Dominguez and Stevens left soon after and that he decided to "jack a car." He described the robbery in some detail and stated that two other persons whose names he did not know participated in the crime, but he denied that Stevens and Dominguez were there. He stated that he did not remember telling police that Stevens and Dominguez participated in the robbery. Over an objection of improper impeachment, Neal was then asked whether a police officer had asked him at the time of his arrest for the names of his accomplices, and Neal admitted that he had given the officer Dominguez' name. Neal also admitted that he had mentioned Stevens' name to police, although he stated that he had never said Stevens was involved in the robbery.

[10,11] Dominguez argues on appeal that the district court erred in permitting the State to impeach Grant and Neal with prior inconsistent statements over objection. When the

Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[18] Generally, the credibility of a witness may be attacked by any party, including the party who called the witness.[19] This principle, first articulated by this court in *State v. Fronning*[20] and subsequently codified in the Nebraska rules of evidence,[21] is a departure from the common-law voucher rule, which "assumed that the party calling a witness vouched for his or her credibility and, therefore, prohibited the party calling a witness from attacking that person's credibility," subject to certain exceptions.[22]

[12-14] One means of attacking the credibility of a witness is by showing inconsistency between his or her testimony at trial and what he or she said on previous occasions.[23] The trial court has considerable discretion in determining whether testimony is inconsistent with prior statements.[24] As a general rule, a witness makes an inconsistent or contradictory statement if he or she refuses to either deny or affirm that he or she did, or if he or she answers that he or she does not remember whether or not he or she made it.[25] It is elementary that out-of-court statements offered to prove the truth of the matter asserted are hearsay.[26] Thus, prior extrajudicial statements of a witness may be received into evidence for the

---

[18] *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013); *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010).

[19] Neb. Rev. Stat. § 27-607 (Reissue 2008); *State v. Marco*, 220 Neb. 96, 368 N.W.2d 470 (1985).

[20] *State v. Fronning*, 186 Neb. 463, 183 N.W.2d 920 (1971).

[21] § 27-607.

[22] R. Collin Mangrum, Mangrum on Nebraska Evidence § 27-607 at 491 (2014). See, also, *State v. Fronning, supra* note 20; *Welton v. State*, 171 Neb. 643, 107 N.W.2d 394 (1961).

[23] *State v. Marco, supra* note 19.

[24] *Id*.

[25] *Id*.

[26] Neb. Rev. Stat. § 27-801(3) (Reissue 2008); *State v. Marco, supra* note 19.

purpose of assisting the jury in ascertaining the credibility of the witness, but unless they are otherwise admissible, they may not be considered as substantive evidence of the facts declared in the statements.[27]

[15,16] A party cannot impeach his or her own witness without limitation.[28] In *State v. Brehmer*,[29] we stated that the rule permitting a party to impeach his or her own witness

"may not be used as an artifice by which inadmissible matter may be gotten to the jury through the device of offering a witness whose testimony is or should be known to be adverse in order, under the name of impeachment, to get before the jury for its consideration a favorable ex parte statement the witness had made."

One commentator refers to this as a "'no artifice'" rule.[30] In *State v. Marco*,[31] we cited with approval a federal case holding that the prosecution should not be permitted

"to call a witness that it knew would not give it useful evidence, just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence—or if it didn't miss it, would ignore it."

More recently, we have said that "a party may not use a prior inconsistent statement of a witness under the guise of impeachment for the primary purpose of placing before the jury substantive evidence which is not otherwise admissible."[32]

An exception to the common-law voucher rule prohibiting impeachment by a party of its own witness existed if the calling party could show surprise and affirmative damage to

---

[27] *State v. Marco, supra* note 19.

[28] See *id*.

[29] *State v. Brehmer*, 211 Neb. 29, 44, 317 N.W.2d 885, 893 (1982). See *Wilson v. State*, 170 Neb. 494, 103 N.W.2d 258 (1960).

[30] Mangrum, *supra* note 22 at 492.

[31] *State v. Marco, supra* note 19, 220 Neb. at 100-01, 368 N.W.2d at 473, quoting *United States v. Webster*, 734 F.2d 1191 (7th Cir. 1984).

[32] *State v. Boppre*, 243 Neb. 908, 926, 503 N.W.2d 526, 537 (1993).

its case.[33] In *Brehmer*,[34] we noted that while it was no longer necessary to show surprise in order to impeach one's own witness with a prior inconsistent statement, the impeachment was nevertheless improper, in part because there was no "affirmative damage" to the prosecution's case by the witness' answers at trial. We employed similar reasoning in *Marco*.

[17] There is tension between our reference to the "affirmative damage" exception in the *Brehmer* and *Marco* cases and our statement in *State v. Price*,[35] decided before either *Brehmer* or *Marco*, that "surprise" and "affirmative damage" were exceptions to the voucher rule and that their reinstatement under the rule stated in § 27-607 "would likely engender unnecessary confusion." We conclude that a party's impeachment of its own witness under § 27-607 with a prior inconsistent statement is not necessarily dependent upon a showing that the trial testimony sought to be impeached caused affirmative damage to the party's case. To the extent that *Brehmer* and *Marco* can be read to hold otherwise, they are disapproved.

The language of § 27-607 is similar to and patterned after rule 607 of the Federal Rules of Evidence.[36] When a Nebraska Evidence Rule is substantially similar to a corresponding federal rule of evidence, Nebraska courts will look to federal decisions interpreting the corresponding federal rule for guidance in construing the Nebraska rule.[37] Summarizing federal court decisions on this point, one commentator articulates the limitation on the scope of rule 607:

> [I]mpeachment of a party's own witness by means of a prior statement may not be employed as a "mere subterfuge" or for the "*primary* purpose of placing before the

---

[33] See, Mangrum, *supra* note 22; 4 Michael H. Graham, Handbook of Federal Evidence § 607:3 (7th ed. 2012); Annot., Propriety, Under Federal Rule of Evidence 607, of Impeachment of Party's Own Witness, 89 A.L.R. Fed. 13 (1988).

[34] *State v. Brehmer, supra* note 29, 211 Neb. at 42, 317 N.W.2d at 893.

[35] *State v. Price*, 202 Neb. 308, 322, 275 N.W.2d 82, 90 (1979).

[36] See Mangrum, *supra* note 22.

[37] *State v. Kitt*, 284 Neb. 611, 823 N.W.2d 175 (2012).

jury substantive evidence which is not otherwise admissible" when the party is aware prior to calling the witness that the witness will not testify consistent with the witness' prior statement.[38]
This rule "focuses upon the content of the witness' testimony as a whole" so that "if the witness' testimony is important in establishing any fact of consequence significant in the context of the litigation, the witness may be impeached as to any other matter testified to by means of a prior inconsistent statement."[39] We conclude that these principles are consistent with the "no artifice" rule employed in our prior cases.[40]

Because the State was not permitted to impeach Grant with a prior inconsistent statement, we focus our attention on the State's direct examination of Neal. Without any reference to his prior statement, Neal's testimony established facts of consequence to the prosecution. Specifically, his testimony established that Stevens and Dominguez were with him in the area where the robbery was committed, shortly before it occurred, and that they shared his motive for finding free transportation to Dominguez' home. Neal's testimony also corroborated Robinett's in-court identification of Stevens as one of the three individuals who attempted to hire his cab. This testimony, when considered together with Stevens' fingerprints found on Yaunk's vehicle and Dominguez' DNA found on the gun, provided at least circumstantial evidence that Stevens and Dominguez participated with Neal in committing the robbery.

Neal's testimony that the other two perpetrators of the robbery were not Stevens and Dominguez, but, rather, two persons whose names he did not know, created an obvious issue of credibility in his account of the crime. Reference to his prior statement implicating Stevens and Dominguez was a legitimate and proper means of impeachment. Because Neal provided key evidence useful to the prosecution independent of his prior

---

[38] 4 Graham, *supra* note 33, § 607:3 at 234-40.

[39] *Id.* at 240-41.

[40] See, Mangrum, *supra* note 22; *State v. Boppre, supra* note 32; *State v. Price, supra* note 35.

statement linking Stevens and Dominguez to the robbery, we cannot conclude that the State called him as a witness for the primary purpose of placing his prior statement before the jury. We conclude that the district court did not abuse its discretion in permitting the State to impeach Neal, over objection, with his prior inconsistent statement.

### Aiding and Abetting
#### Instruction

Over Dominguez' objection, the district court gave an aiding and abetting instruction to the jury. It provided:

> A defendant can be guilty of robbery even though he personally did not commit any act involved in the crime so long as he aided someone else to commit it. A defendant aided someone else if:
>
> (1) the defendant intentionally encouraged or intentionally helped another person to commit the robbery; and
>
> (2) the defendant intended that the robbery be committed; or the defendant knew that the other person intended to commit, or expected the other person to commit the robbery; and
>
> (3) the robbery in fact was committed by that other person.

On appeal, Dominguez argues the instruction was improper because there was no evidence to support it. He contends that the evidence showed either he committed robbery or he did not, and that the evidence cannot be construed to show he aided and abetted a robbery.

[18,19] The determination of whether a jury instruction is correct is a question of law, and an appellate court resolves questions of law independently of the determination reached by the trial court.[41] In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.[42]

---

[41] See *State v. Miller*, 281 Neb. 343, 798 N.W.2d 827 (2011).

[42] *State v. Sanders*, 269 Neb. 895, 697 N.W.2d 657 (2005); *State v. Wisinski*, 268 Neb. 778, 688 N.W.2d 586 (2004).

We addressed a similar situation in *State v. Spidell*.[43] There, a man named "Jorstad" was arrested by police while in the act of burglarizing a service station. Shortly after his arrest, Jorstad told police that Robert Spidell had also been in the station with him and had suggested the burglary. Spidell was arrested a few minutes later a short distance away from the station, driving Jorstad's car. At trial, Spidell testified he had simply borrowed Jorstad's car that evening and had been out running errands when he was arrested.

The district court gave an aiding and abetting instruction over Spidell's objection. Spidell argued it was improper, because the State's theory was that he was an actual participant in the robbery and the evidence supported only that theory. But we reasoned the instruction was proper, in part because the evidence was such that "the jury could . . . have believed [Spidell] was present, merely aiding and abetting as by driving the defendant's vehicle, or giving assistance at the scene by breaking the window, but not making entry."[44] We held:

> Where the evidence in a prosecution for burglary is such as to permit the jury to find that the defendant's participation with another in the crime was such as would make him at common law either an accessory before the fact, a principal in the second degree, or a principal, then it is proper to give an instruction on aiding and abetting . . . .[45]

This case is slightly different, because there was no indication that Dominguez acted as an accessory either before or after the robbery. Instead, the evidence was that all three men were involved in the robbery. Nevertheless, Yaunk testified that only one man struck her with the gun and demanded her money and that another man took her cell phone and keys. It is possible the jury could have found the other two aided and abetted these acts. Notably, the jury was instructed that to find Dominguez guilty of robbery, it had to find he "took money

---

[43] *State v. Spidell*, 194 Neb. 494, 233 N.W.2d 900 (1975).

[44] *Id.* at 498, 233 N.W.2d at 903.

[45] *Id.* at 498, 233 N.W.2d at 903-04.

or personal property of any value" "with the intent to steal" and "did so forcibly and by violence or by putting . . . Yaunk in fear." The aiding and abetting instruction was appropriate here, because the jury could have determined that it was not Dominguez who brandished the gun or took the cell phone and keys, but that he nevertheless participated in the robbery.

## Sufficiency of Evidence

Dominguez argues there was insufficient evidence to convict him of robbery, largely because there was no way to identify him as one of the participants in the robbery.

[20] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[46]

Dominguez' argument is without merit. Yaunk identified him at trial as one of the perpetrators, his DNA was found on the gun abandoned near the stolen vehicle, Neal's testimony placed him near the scene of the robbery near the time of the robbery, and Grant's testimony showed Dominguez demonstrated an interest in the crime the morning after it occurred. This evidence, if believed by the trier of fact, was more than sufficient to convict him.

## Excessive Sentence

[21] Dominguez argues the sentence of 6 to 10 years' imprisonment was excessive. The 6- to 10-year sentence was well within the statutory limits for robbery, which is a Class II felony with a minimum of 1 year's imprisonment and a maximum of 50 years' imprisonment.[47] An appellate court will not

---

[46] *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014); *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013).

[47] Neb. Rev. Stat. §§ 28-105 and 28-324 (Reissue 2008 & Cum. Supp. 2014).

disturb sentences that are within statutory limits, unless the district court abused its discretion in establishing the sentences.[48] We thus can find it excessive only if we conclude the district court abused its discretion in imposing it.

[22,23] When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense.[49] The sentencing court is not limited to any mathematically applied set of factors.[50] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[51]

Dominguez contends the sentence was an abuse of discretion, because the district court did not adequately consider that he was only 15 years old at the time of the offense, that he had no prior felonies, that he had a turbulent childhood, and that he could benefit from treatment, not incarceration.

But a review of the sentencing order shows the district court considered all of these factors. What Dominguez is really contesting is the weight the court gave those factors. A sentencing court has considerable discretion in imposing sentences, and in light of all the evidence, the district court did not abuse its discretion in imposing a sentence of 6 to 10 years' imprisonment.

## CONCLUSION

For the foregoing reasons, we affirm Dominguez' conviction and sentence.

AFFIRMED.

---

[48] *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001).

[49] See *State v. Casillas*, 279 Neb. 820, 782 N.W.2d 882 (2010).

[50] *Id.*

[51] *Id.*