IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. BRADLY M.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

BRADLY M., APPELLANT.


Filed April 19, 2016.   No. A-15-1006.


Appeal from the District Court for York County: JAMES C. STECKER, Judge. Affirmed.

Bruce E. Stephens, of Stephens Law Offices, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.


IRWIN, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

Bradly M., who was 17 years old at the time of the offense, was charged in the district court for York County with strangulation, a Class IV felony, pursuant to Neb. Rev. Stat. § 28-310.01 (Reissue 2008). Bradly filed a motion to transfer his case to juvenile court, which the district court denied. Following a bench trial, Bradly was convicted of strangulation and sentenced to 4 years' probation. On appeal, Bradly challenges the denial of his motion to transfer to juvenile court. We affirm.

BACKGROUND

The basic facts of the offense were undisputed. Bradly's defense theory at trial, which he supported with his own testimony, was that the strangulation was not done knowingly or intentionally because Bradly was unaware of his actions.

Generally, the facts were that on October 7, 2014, Bradly was a resident of Epworth Village, a residential group home for juvenile offenders in York, Nebraska. Carey Stutzman was

on duty as a residential manager and informed Bradly that, under the facility's behavioral points system, he had not "earned enough points" to have "privileges that evening."

Shortly after hearing this information, Bradly went to his room and slammed the door. Stutzman heard what sounded like glass breaking, so she knocked on the door, telling Bradly she needed to ensure there was no broken glass. According to Stutzman, Bradly screamed, "I'm going to kill you," and slammed the door, which Stutzman had opened. Stutzman again knocked on the door, indicating she could not leave Bradly alone with broken glass.

At that point, Bradly opened the door and placed his hands around Stutzman's neck, strangling her and pinning her against the wall. Stutzman was unable to breath or speak, other than to utter a nearby staff member's name. The staff member responded and was able to free Stutzman, who sought protection behind the locked door of her office. Bradly then banged on the office door window until staff members restrained him.

On October 24, 2014, in the district court for York County, Bradly was charged with one count of strangulation. Bradly, who was represented by counsel, filed a motion to transfer his case to juvenile court. A hearing on the motion was held on November 10.

At the hearing, the State offered five exhibits, which were received without objection. Exhibit 1 was Stutzman's written statement regarding the incident. Exhibit 2 was a "Probation Officer's Affidavit of Probable Cause," recounting the facts of the incident and indicating that, at the time, Bradly was on probation arising out of a proceeding in the juvenile court of Lancaster County. The affidavit also indicated that in another juvenile court proceeding in Lancaster County, Bradly had been adjudicated as a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008).

Exhibit 3 consisted of the court documents from the first juvenile court case referenced in the probation officer's affidavit. The documents included a petition filed on November 29, 2011, alleging Bradly was a child as defined by § 43-247(2), in that "on, about, or between August 28, 2010 and August 29, 2011," he committed first degree sexual assault, a Class II felony, pursuant to Neb. Rev. Stat. § 28-319(1)(b), (2) (Reissue 2008). The documents also included an amended petition with downgraded allegations and an order entered on January 26, 2012, adjudicating Bradly a child as defined by § 43-247(3)(b) in that "on or about August 28, 2010, and August 29, 2010," he engaged in inappropriate sexual contact with an individual who was 9 years old at the time of the incident (Bradly was 13 years old at the time). A dispositional order dated July 2, 2014, placed Bradly on probation for the remainder of his minority.

The court documents contained in exhibit 3 also revealed that the Nebraska Department of Health and Human Services (DHHS) had changed Bradly's placement a number of times following his adjudication. It is unclear where Bradly was placed initially; however, following a subsequent sexual assault incident that occurred on June 24, 2012, DHHS placed Bradly with foster parents who had experience working with sexual offenders. On June 31, an emergency change of placement was made, although the reason for the change is not disclosed in the record before us; Bradly was placed with new foster parents. On August 27, DHHS removed Bradly from the new foster home and placed him in the Child Guidance Center in Lincoln, Nebraska, where he could receive sexual offender treatment. On November 20, the juvenile court approved a change of placement to the Whitehall Psychiatric Residential Treatment Facility (Whitehall) in Lincoln; the

reason for the change is not disclosed. On December 21, the court approved a change of placement to Benchmark Behavioral Health Systems (Benchmark), a psychiatric residential treatment facility in Utah; again, the reason is not disclosed. (The record reflects that after Bradly completed his treatment at Benchmark in June 2014, DHHS placed him at Epworth Village, where the present offense occurred.)

Exhibit 4 consisted of documents from another case in the juvenile court of Lancaster County. The two-count petition in that case alleged Bradly was a child as defined by § 43-247(1) in that on June 24, 2012, he committed third degree sexual assault, a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-310 (Reissue 2008) (count I); and between July 1 and 31, 2011, he committed third degree sexual assault (count II). An order entered on August 24, 2012, adjudicated Bradly a child as defined by § 43-247(1) pursuant to the allegations of count I; the court dismissed count II. (The record reveals that the victim of count I was 11 years old; Bradly was 15 years old at the time.)

Exhibit 5 contained court documents from the second juvenile court proceeding referenced in the probation officer's affidavit. The documents disclosed that on November 5, 2014, the juvenile court adjudicated Bradly a child as defined by § 43-247(3)(a), in that Bradly's mother neglected to provide him with proper or necessary subsistence, education, or other care necessary for his health or well-being.

The State rested after offering its five exhibits. Bradly called Kelsey Pollard, who testified as follows. Pollard was a DHHS employee and had been Bradly's case worker since August 29, 2014. According to Pollard, following Bradly's completion of the treatment program at Benchmark in June 2014, DHHS placed him at Epworth Village. At Epworth Village, he received individual, group, and family therapy and participated in a behavioral program. The individual therapy focused on the behavioral issues Bradly had addressed while at Benchmark, including sexual attitudes, anger outbursts, and frustrations. Pollard explained that the program at Benchmark was primarily for sexual offenders and that Bradly successfully completed the program. At Epworth Village, the focus was not so much on Bradly's sexual offenses as it was on developing coping skills, working through anger outbursts, and preparing to transition into the community. When asked to describe Bradly's anger outbursts, Pollard testified that at Benchmark and Epworth Village, there were times when Bradly became frustrated and lashed out at people verbally or physically.

According to Pollard, Bradly had been removed from Epworth Village following the strangulation incident; if his case were transferred to the juvenile court, he would receive an updated psychological evaluation to determine an appropriate placement. (The record reveals that Bradly was placed in "Staff Secure" detention at the Lancaster County Youth Services Center in Lincoln during the pendency of this case.) Pollard testified that Bradly had been "doing well in the program" prior to the strangulation incident and had learned to use coping skills. According to Pollard, Bradly's diagnoses included impulse control disorder, post-traumatic stress disorder, and borderline intellectual functioning. Pollard believed the juvenile court would be able to address Bradly's problems and that it was in his best interest that his case be transferred to juvenile court.

Allison O'Neill, a DHHS child and family service specialist, was Bradly's next witness. She testified that in her experience, when juveniles at Epworth Village had incidents resulting in

charges, such as getting into fights with staff members or other residents, their cases remained in juvenile court.

Bradly was called to testify by his counsel, apparently because during the State's examination of Pollard, there was some confusion as to whether Bradly had spent any time at Whitehall. Bradly testified that he was at Whitehall "for approximately three weeks before [he] had a blow-up." He was then placed in Benchmark. On cross-examination, Bradly explained that the "blow-up" involved him getting angry with one of the staff members, throwing a chair at him, and trying to strangle him.

At the close of the hearing, the district court took the matter under advisement. On December 9, 2014, the court entered an order denying Bradly's motion to transfer the case to juvenile court. The court addressed each of the 15 factors in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2012). We summarize the court's findings to the extent necessary in our analysis section below. Ultimately, the court determined that considerations of Bradly's best interest and the security of the public weighed in favor of retaining jurisdiction in the district court. In particular, the court noted (1) this was not Bradly's first incident involving strangulation; (2) he will require supervision beyond the time he would "age out" of the juvenile court's jurisdiction; and (3) he has been in the juvenile system for over 2 years and has completed treatment, yet still committed the present offense.

As noted, after the district court denied Bradly's motion to transfer to juvenile court, Bradly was convicted of strangulation at a bench trial and sentenced to 4 years' probation. Following sentencing, Bradly timely appealed to this court.

## ASSIGNMENTS OF ERROR

Bradly assigns that the district court erred in denying his motion to transfer his case to juvenile court.

## STANDARD OF REVIEW

The denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009).

## ANALYSIS

At the time of Bradly's offense, and at the time of the hearing on his motion to transfer his case to juvenile court, Neb. Rev. Stat. § 43-247 (Supp. 2013), as amended by 2014 Neb. Laws, L.B. 853, governed the juvenile court's jurisdiction. The statute gave the juvenile court concurrent original jurisdiction with the district court as to any juvenile who committed an act which would constitute a felony under the laws of this state. § 43-247. Also in effect at the time, Neb. Rev. Stat. § 29-1816(2)(a) (Cum. Supp. 2012) required the district court, in any case involving a defendant who was under 18 years of age at the time of his or her alleged crime, to hold a hearing on a timely filed motion to waive jurisdiction to the juvenile court. § 29-1816(2)(a). It further provided that the court was to utilize the criteria set forth in § 43-276 and to waive jurisdiction to juvenile court "unless a sound basis exist[ed] for retaining the case." § 29-1816(2)(a).

In 2014, the Legislature passed L.B. 464, which removed the jurisdictional provisions from § 43-247 and transferred them, as amended, to Neb. Rev. Stat. § 43-246.01 (Cum. Supp. 2014). See 2014 Neb. Laws, L.B. 464, §§ 8, 9. The newly created § 43-246.01 designated the juvenile court as the proper venue for initiating certain juvenile cases, and would have required Bradly's case to be initiated in the juvenile court. However, the pertinent provisions of L.B. 464, although approved by the Governor on April 15, 2014, did not go into effect until January 1, 2015, a few weeks after the court denied Bradly's motion to transfer his case to juvenile court. See 2014 Neb. Laws, L.B. 464, § 37.

Bradly argues on appeal that the district court should have considered the statutory amendments contained in L.B. 464, since less than 2 months following the hearing on his motion, the amendments would have required a case like his to be filed in juvenile court. The State responds that Bradly has waived this argument by failing to assign it as error.

We are not persuaded by the State's waiver argument. At the hearing on Bradly's motion to transfer, Bradly asked the court to consider L.B. 464. In its order denying the motion, the court declined to consider "changes in the law [that] are not now effective." We conclude that Bradly's sole assignment of error, that the court erred in denying his motion to transfer, permits us to address any of the court's reasons for the denial.

Nevertheless, we cannot accept Bradly's argument that the district court should have considered the provisions of L.B. 464. The Nebraska Supreme Court has held: "'While procedural statutes do apply to pending litigation, it is a general proposition of law that they have no retroactive effect upon any steps that may have been taken in an action before such statutes were effective. All things performed and completed under the old law must stand.'" *State v. Groff*, 247 Neb. 586, 589, 529 N.W.2d 50, 53 (1995), quoting *State v. Russell*, 194 Neb. 64, 230 N.W.2d 196 (1975). The provisions of L.B. 464 designating the juvenile court as the proper venue for initiating cases like the one against Bradly, were procedural changes that had no retroactive effect on actions completed prior to the law's effective date. Furthermore, the provisions of L.B. 464 permitted cases like the one against Bradly to be transferred from juvenile court to district court in accordance with the provisions of Neb. Rev. Stat. § 43-274 (Cum. Supp. 2014). See § 43-246.01(2). Given the public safety concerns the State expressed at the hearing on Bradly's motion to transfer, we have no doubt the State would have sought such a transfer had Bradly's case been initiated in juvenile court. Thus, even if this court or the district court were to consider the pending statutory amendments included in L.B. 464, they would not have any effect on the outcome of Bradly's motion to transfer.

We now turn to Bradly's primary argument on appeal, that the district court abused its discretion in denying his motion to transfer, because utilizing the factors listed in § 43-276, the State did not show a sound basis for retaining the case in district court. The State responds that the denial was supported by appropriate evidence and should be affirmed.

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Dominguez*, 290 Neb. 477, 483, 860 N.W.2d 732, 741 (2015). "In order to retain the proceedings, the court need not resolve every

factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id*. at 483, 860 N.W.2d at 740-41. "The burden of proving a sound basis for retention lies with the State." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015).

Although the district court made findings with respect to all of the § 43-276 factors, Bradly addresses the court's findings on factors 1, 3, 6, 7, and 8 only, which we now discuss.

The first factor is "[t]he type of treatment such juvenile would most likely be amenable to." § 43-276. Addressing this factor, the district court found: "The defendant has been in the juvenile system for two years and been through treatment at Benchmark and nevertheless continues with anger and violent outbursts. The history of the juvenile indicates that further treatment in the juvenile system is not sufficient to deal with his violent behavior."

Bradly argues the court ignored that he "was at Benchmark for treatment of sexual offenses" and that "it had nothing to do with his anger or violent outbursts." Brief for appellant at 7. He also maintains there was no evidence "that further treatment would not be sufficient to deal with his violent behavior." *Id*. at 8.

We disagree that the court's findings concerning the first factor were unsupported by evidence. While Pollard testified that the program at Benchmark was primarily for sexual offenders, she further testified that Bradly's therapy at Epworth Village focused on the same behavioral issues Bradly had addressed at Benchmark, including sexual attitudes, anger outbursts, and frustrations. She further testified that Bradly had instances of lashing out physically or verbally at Benchmark and Epworth Village. Although Bradly's treatment at Benchmark had been more focused on sexual behaviors than his treatment at Epworth Village, this does not mean Bradly's treatment at Benchmark "had nothing to do with his anger or violent outbursts." Brief for appellant at 7. Rather, Pollard's testimony clearly indicated that Bradly addressed anger issues at both Benchmark and Epworth Village.

Furthermore, the State's evidence revealed that after being removed from two foster homes in as many months in 2012, Bradly was placed in the Child Guidance Center for approximately 3 months, then in Whitehall for approximately 1 month, and then in Benchmark for 18 months. According to Bradly's testimony on cross-examination, he was placed in Benchmark after having a "blow-up" at Whitehall during which he got angry with a staff member, threw a chair at him, and tried to strangle him. After completing treatment at Benchmark and receiving approximately 4 months' treatment at Epworth Village, Bradly engaged in the present strangulation incident. Based on this history, the evidence supported the court's finding that Bradly was not amenable to continued treatment in the juvenile system.

The third factor is "the motivation for the commission of the offense." § 43-276. The district court found: "[T]he clear motivation for the offense was rage and anger. The defendant despite having been through treatment has not been able to control his impulses and behavior." Bradly again argues "there was no evidence indicating that he had been treated for his anger issues." Brief for appellant at 8. He further contends that prior to the incident, he was in his room using the coping skills he had learned, when Stutzman "broke protocol" and entered his room. *Id*.

We have already rejected Bradly's contention that there was no evidence of his prior treatment for anger issues, and we need not address it a second time. Regarding Bradly's

suggestion that Stutzman's protocol-violation somehow prompted the strangulation incident, there is nothing in the record to suggest Stutzman violated protocol by attempting to ensure Bradly was not left alone in his room with suspected broken glass. This was entirely reasonable under the circumstances. Furthermore, even if Bradly was trying to utilize the coping skills he had learned prior to the incident, it is clear those skills failed him, both when he caused the noise that Stutzman suspected was breaking glass and when he strangled Stutzman. The evidence supported the court's finding concerning the motivation for the offense.

The sixth factor, which is the next factor Bradly addresses, is "the sophistication and maturity of the juvenile as determined by consideration of his or her home, school activities, emotional attitude and desire to be treated as an adult, pattern of living, and whether or he or she has had previous contact with law enforcement agencies and courts and the nature thereof." § 43-276. Addressing this factor, the district court noted (1) Pollard's testimony that Bradly was "immature," (2) Bradly's borderline intellectual functioning, (3) his diagnosis of impulse control disorder, and (4) his status as a sexual abuse perpetrator and victim (the record reflects Bradly had been sexually abused). The court concluded this factor weighed in favor of transferring to juvenile court. Bradly simply recites the court's finding in support of his position that the case should have been transferred.

The court's finding with respect to the sixth factor does not render its decision to retain the case an abuse of discretion. As noted, the court need not resolve every factor against a juvenile in order to retain the proceedings, and there is no prescribed method for weighing the factors. *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015). Although Bradly's immaturity and low intellectual functioning weighed in favor of a transfer, we do not disagree with the district court that other considerations outweighed this one factor.

Bradly next addresses the seventh factor, which is "whether there are facilities particularly available to the juvenile court for treatment and rehabilitation of the juvenile offender." § 43-276. The court found that "[n]o facilities were identified as uniquely available to the juvenile court for the defendant's treatment." Bradly contends the court's finding erroneously suggests "that the defendant has some sort of burden to show that [the case] should be transferred to juvenile court." Brief for appellant at 8.

We decipher no such burden-shifting in the court's finding. While the burden of proof is on the State to establish a sound basis for retention, *State v. Stevens*, 290 Neb. 460, 860 N.W.2d 717 (2015), this does not mean the defendant has no obligation to produce evidence. Section 29-1816(2)(a) provides that at a hearing on a motion to transfer a case to juvenile court, the State "shall present the evidence and reasons why such case should be retained," and the defendant "shall present the evidence and reasons why the case should be transferred." Thus, when the court noted that no such facilities "were identified," without indicating which party failed to identify them, the court was simply noting the absence of evidence produced by either party, not shifting the burden of proof. Regardless, the absence of evidence on this single factor does not mean that the State failed to meet its burden of proof in light of all of the § 43-276 factors.

The eighth and final factor Bradly addresses is "whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives

- 7 -

best suited to this purpose." § 43-276. The district court found that Bradly was already 17½ years old at the time of the hearing on his motion to transfer and that he "cannot be rehabilitated and treated prior to his 19th birthday." Bradly asserts the State "did not prove that," citing Pollard's testimony that "he was doing well and was making progress" prior to the incident. Brief for appellant at 9.

Supporting the district court's finding with respect to the eighth factor was Bradly's prior involvement in the juvenile system arising out of two sexual assault incidents; Bradly was on probation arising out of one of those incidents when he committed the present offense at age 17. Given Bradly's age, his 2 years of involvement in the juvenile system, and the evidence of his continued behavioral issues despite receiving treatment at the Child Guidance Center, Whitehall, Benchmark, and Epworth Village, the court's finding on this factor was supported by sufficient evidence. Notably, the court placed Bradly on probation until September 2019, meaning he will be under supervision well beyond the time that he would have "aged out" of the juvenile court's jurisdiction at age 19 in May 2016.

Although Bradly does not address the remaining § 43-276 factors (several of which the district court simply found were inapplicable), we conclude that considering all of the evidence and relevant factors, the district court did not abuse its discretion when it denied Bradly's motion to transfer his case to juvenile court. The key considerations supporting the court's decision were Bradly's age and his need for supervision for a period extending beyond his minority, his prior juvenile offenses and the violence involved in the present offense, and his continued behavioral issues despite his 2 years of involvement in the juvenile system, during which time he received treatment for his anger issues, among other issues.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the district court for York County.

AFFIRMED.