IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. ZECHARIAH H.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ZECHARIAH H., APPELLANT.

Filed March 17, 2026.    No. A-25-793.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Kyle M. Melia for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

RIEDMANN, Chief Judge.

### INTRODUCTION

Zechariah H. appeals the order of the district court for Lancaster County denying his motion to transfer his case to juvenile court. Finding no abuse of discretion, we affirm.

### BACKGROUND

On July 30, 2025, Zechariah was charged with robbery, a Class II felony, and possession of a stolen firearm, a Class IIA felony. The charges arise out of a June 13 incident during which law enforcement responded to a residence outside of which they located Hayden H., who had been shot. He was transported to the hospital and a short time later, Emelio R. arrived at the same hospital, also with gunshot wounds. An investigation revealed that Emelio attempted to rob Hayden of his firearm. Hayden fired shots and Emelio returned fire.

- 1 -

Emelio informed law enforcement that he had been at Zechariah's house and saw Hayden there. Emelio, who disliked Hayden, intended to rob him of his gun. He advised Zechariah of his plan and asked Zechariah for his gun which he provided. In an interview with law enforcement, Zechariah stated that he told Emelio he wanted no part of the robbery but told him where the gun was. The firearm had been reported stolen.

At the transfer hearing, Brianna Johnson, a juvenile probation supervisor, testified that Zechariah had no prior juvenile court involvement, no other citations in juvenile or criminal court, and had not received any juvenile court services. However, based on the severity of the charges, she was confident that he would likely be considered a high-risk youth and supervised by a high-risk officer. She relayed the services available through the juvenile probation system but admitted that the services that would be offered to Zechariah were unknown as it would depend on his predisposition investigation report. She was the only witness called at the transfer hearing.

In addition to Johnson's testimony, the State offered several exhibits including the probable cause finding, Zechariah's arrest record, his intake summary, and his risk assessment. Zechariah offered school records and letters of support. Zechariah was 14 years old at the time of the incident and turned 15 shortly thereafter.

In a written order, the district court denied Zechariah's motion. It recognized that Neb. Rev. Stat. § 43-276 (Cum. Supp. 2024) identifies 15 factors the court shall consider in determining whether to transfer a case. It found that the type of treatment to which Zechariah would most likely be amenable was not clear due to the absence of any prior involvement with juvenile or criminal court. However, because Zechariah was 15 years old, "only approximately four more years" were available for him to remain under juvenile court jurisdiction. The district court determined that based on the severity of the charges, there was a substantial question whether adequate rehabilitation could be accomplished within that time. Consequently, the court found this factor weighed in favor of retention in district court.

The district court also determined that the offenses included violence, possession of a stolen firearm and use of it to commit a violent crime showed purely adult motivation, it was in Zechariah's best interest that the district court retain jurisdiction, the risk to public safety was substantial, Zechariah was old enough to appreciate the serious nature of his acts, the offenses involved a firearm, and Zechariah's possession of a stolen firearm and providing it to another to be used to perpetrate an armed robbery showed a disregard for public safety. Because of these factors, the district court concluded that there existed a sound basis for retention in district court.

Zechariah appeals.

ASSIGNMENT OF ERROR

Zechariah assigns the district court erred in denying his motion to transfer his case to juvenile court.

STANDARD OF REVIEW

An appellate court reviews the determination of whether a juvenile's case should be transferred de novo on the record for an abuse of discretion. *In re Interest of Aaden S.*, 320 Neb. 785, 30 N.W.3d 668 (2026).

An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

ANALYSIS

*Juvenile Transfer Principles.*

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, both of the allegations against Zechariah put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2024).

In the instant case, when Zechariah moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276:

> (a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, "[i]t is a balancing test by which public

protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Aldana Cardenas*, 314 Neb. 544, 561, 990 N.W.2d 915, 928 (2023). "[I]n order to retain the proceedings, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "[T]he burden of proving a sound basis for retention lies with the State." *Id.* at 557, 990 N.W.2d at 926.

Here, the district court identified the factors it found which weighed in favor of retention and those that it did not. It concluded that upon balancing, the factors weighed in favor of retention. Zechariah argues that the evidence did not give rise to this conclusion.

However, to reverse the district court's ruling on a motion to transfer, we are limited to an abuse of discretion standard. See *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.* The Supreme Court has instructed that "If the Court of Appeals substitutes its judgment regarding the weight of the evidence, it fails to apply an abuse of discretion standard of review." *Id.* at 149, 21 N.W.3d at 325. And it has likened our abuse of discretion standard in transfer cases to that used in reviewing a criminal sentence.

It is the standard applicable to reviewing a criminal sentence, where we have explained that

"[i]t is not the function of an appellate court to conduct a de novo review of the record to determine whether a sentence is appropriate" and that "[t]he standard is not what sentence we would have imposed." Likewise, in reviewing a trial court's ruling on a transfer motion, an appellate court's function is not to review the record de novo to determine whether we think the case should be transferred.

*Id.* at 151-52, 21 N.W.3d at 327.

*Amenability to Treatment.*

With the above principles in mind, we turn to Zechariah's argument. He argues that "the district court abused its discretion in concluding that the State met its burden despite presenting little to no evidence on several critical statutory factors under [] § 43-276." Brief for appellant at 11-12. He highlights that the State offered "no evidence" regarding the treatment to which Zechariah would be amenable, his ability to appreciate the nature and seriousness of the conduct, the motivation for the offense or whether he was a gang member. However, Zechariah argues only the absence of the State's evidence on amenability. We therefore address that argument.

The district court acknowledged that this factor was not clearly determinative due to Zechariah's lack of prior involvement with the juvenile or criminal court. However, because the maximum penalties for the crimes charged were 50 and 20 years' imprisonment, this reflected the gravity of the charges which raised concern that the length of juvenile court jurisdiction would be insufficient. Therefore, the court determined that this factor weighed in favor of retention.

The only direct evidence of available treatment in the juvenile court came from Johnson who did not render an opinion on whether Zechariah would be amenable to treatment through the juvenile court. Rather, she outlined the treatment that would be available. But even when an expert

opines favorably on amenability through the juvenile court and the State presents no direct evidence to the contrary, this is not determinative. Our Supreme Court precedent dictates that a trial court does not necessarily abuse its discretion in determining insufficient time in the juvenile court exists to address the juvenile's needs. See, e.g., *Jeremiah T., supra* (affirming denial of transfer to juvenile court despite absence of State's direct evidence regarding amenability based in part upon "nature and depravity of the offense"). See, also, *In re Interest of Aaden S.*, 320 Neb. 785, 30 N.W.3d 668 (2026) (upholding decision to transfer juvenile action to district court when amenability to treatment weighed in favor of retention in juvenile court but violence, motivation, age, and public safety supported transfer).

Here, the district court considered that Zechariah had 4 years during which he could be under the juvenile court's jurisdiction and compared that to the potential maximum penalties of 50 and 20 years' imprisonment for the crimes charged. The gravity of the offenses caused concern that adequate rehabilitation time would not be available, leading to the district court's conclusion that this factor weighed in favor of retention. We cannot say this was an abuse of discretion.

Zechariah distinguishes his lack of prior criminal activity from the juveniles involved in *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015) and *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). He argues that the differences further highlight the district court's abuse of discretion. But not all juveniles who have their cases tried in the district court have prior law violations. See, e.g., *In re Interest of Aaden S., supra*; *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025). In light of the numerous factors a court is to weigh under § 43-276, we find a comparison of transfer decisions as unavailing as a comparison of sentences in criminal cases. See *State v. Guida*, 230 Neb. 961, 434 N.W.2d 522 (1989) (recognizing uniqueness of each defendant's life, character and previous conduct).

Finally, Zechariah argues that the court failed to consider his age as a mitigating factor. He points to the U.S. Supreme Court decision *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), in which it acknowledged a juvenile's lack of maturity and underdeveloped sense of responsibility improves with age. But the district court did consider Zechariah's age and found it weighed in favor of transfer, with the caveat that "it must be considered in context with the other statutory factors." When analyzing Zechariah's ability to appreciate the nature of his conduct, the district court concluded that "he was old enough to appreciate the serious nature of stealing a firearm and providing it to another person to commit a violent crime." The district court rejected the notion that this was "an impulsive decision made in the heat of the moment." We cannot conclude that this decision is based upon reasons that are untenable or unreasonable.

Although Zechariah lists other factors with which he takes issue, he does not argue them in his brief. Rather, his argument is that as set forth above. We therefore do not separately address any other factor. Our review of the record, including the reasons articulated in the district court's order, leads us to conclude that the district court's order is neither based upon reasons that are untenable or unreasonable nor is its ultimate decision to retain jurisdiction clearly against justice or conscience, reason, and evidence.

CONCLUSION

We find no abuse of discretion in the district court's order denying Zechariah's motion to transfer jurisdiction to the juvenile court. Therefore, we affirm.

AFFIRMED.